JOHN H. STALBIRD ET UX *v.* TOWN OF WASHINGTON.

January Term, 1934.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and GRAHAM, JJ.

Opinion filed May 1, 1934.

214

*Gelsi Monti* for the plaintiffs.

*Wilson & Keyser* and *J. Ward Carver* for the defendant.

POWERS, C. J.  This is an action of contract whereby the plaintiffs seek to recover damages for the breach of an agreement involving the sale of a stone wall for highway uses.  At the trial below, a verdict was ordered for the defendant.  The plaintiffs allege error.

In 1926, a State aid road improvement project was undertaken in the defendant town on the main highway from Washington to Chelsea.  Agreeably to the statute, G. L. 4586, the State highway commissioner appointed C. E. Stanley as foreman in charge of the work.  The contract in question was made with the plaintiffs by Stanley, and the stone from the wall were used on this highway job.  The plaintiffs claim that Stanley was acting as the agent of the defendant town in the purchase of the stone, while the defendant insists that he was acting in behalf of the State.

1. The plaintiffs offered evidence tending to show a ratification of Stanley's contract by the selectmen of the defendant town.  It was excluded, and the plaintiffs excepted.

Ratification, as a doctrine of the law, applies only to acts done and contracts made for and in the name of another. 21 R. C. L. 923; *Fraser* v. *Sweet,* 2 Brit. Rul. Cas. 254, and note; *Schlessinger* v. *Forest Products Co.,* 78 N. J. Law, 637, 76 Atl. 1024, 30 L. R. A. (N. S.) 347, 349, 138 A. S. R. 627; Restatement, Agency, § 85.  So, when counsel offered to show by one of the plaintiffs that when the agreement in question was made, Stanley said that "the town of Washington wanted to purchase his stone wall, and that the town of Washington, in consideration of the purchase," would do this and that, the evidence should have been admitted to establish the first step in the proof of ratification.  In connection with this offer, the plaintiffs offered to show that after they had expressed their dissatisfaction with the way in which Stanley had performed the contract, the selectmen of the defendant town came to them and officially agreed to clean up the stone and put up a good fence as the plaintiffs claimed the town was, by the contract, obligated to do. This offer was excluded.  The plaintiffs further offered to

show that later on, the defendant did erect a fence of the general character of the one called for by the Stanley agreement. This was excluded. The several exceptions to these exclusions must be sustained. Regardless of the original legality of the plaintiffs' claim against the town, it became valid if ratified as the above evidence would have tended to show. The selectmen by virtue of their statutory authority (G. L. 3969) had this power of ratification—provided, of course, they acted in good faith and for the best interests of the town as they saw it. *Town of Topsham* v. *Rogers*, 42 Vt. 189, 193; *Town of New Haven* v. *Weston*, 87 Vt. 7, 19 *et seq.*, 86 Atl. 996, 46 L. R. A. (N. S.) 921.

2. The plaintiffs offered evidence tending to show that, as a matter of fact, Stanley was acting as the agent of the defendant town. It was excluded and the plaintiffs excepted. As will presently appear, no harmful error resulted.

■ The establishment, construction, and maintenance of public highways is a purely governmental function. And this is so whether the State acts directly, or by one of its municipalities (*Atkins* v. *Kansas*, 191 U. S. 207, 222, 48 L. ed. 148, 24 Sup. Ct. 124), which are mere auxiliaries of the State created for the purpose of exercising such powers as may lawfully be delegated to them. So the question here is not whether the State could require the town to do this job, but whether under the statute it did.

By the express terms of G. L. 4387, highways are to be laid out, made, and repaired by the town in which they are situated except as otherwise provided by law. The proviso contained in this last clause first appears in R. L. 2913, and is not the result of specific legislative amendment. This statute (G. L. 4387), in its original form, antedates any of our State-aid laws, and so, of course, has no reference to them. Prior to the enactment of such laws, it had been the established policy of the State, since 1839, at least, to put the whole burden of the highways upon the towns. It was in 1892, that the five per cent. State highway tax was first provided for. The avails of it were redistributed to the towns on the basis of their road mileage. The money was handled and expended by the towns. In 1898, a State highway commissioner was provided for. He was given supervision of the expenditure of State road funds, but acted

through the town road commissioners who were to expend the money. This power of the towns over such funds continued until the enactment of No. 145, Acts of 1912, which provided that such moneys should be expended under the direct supervision of the State highway commissioner and his assistants— and this is the language of G. L. 4586. It thus appears that the policy of the State was modified to the extent of granting limited aid to the towns, and to the further extent of retaining in the hands of the State commissioner direct supervision of the expenditure of the money of the State. So far as supervision goes, it is all in the hands of the State. But nowhere, down to the time here material, has the Legislature provided that State highway funds shall be expended by the State authorities. Nowhere has the Legislature indicated that it intended to do more than grant State aid to the towns. Moreover, the statute last referred to speaks of ''all money appropriated or apportioned to towns.'' The five per cent. tax is ''apportioned'' to them. Any State money available to them under G. L. 4591 is ''apportioned.'' In the General Appropriation Act of 1925 (Laws 1925, No. 19, § 24), an appropriation of $200,000 is made to the highway department for ''state aid to towns for permanent highway construction''; another of $75,000 for ''state aid for bridges''; and still another for ''supervision and engineering.'' All this confirms the opinion that at that time, the Legislature had not intended to take over the highways or to relieve the towns from the responsibilities imposed upon them by G. L. 4387. True it is that G. L. 4586 designates these roads as ''state roads,'' but they are more accurately termed ''state aid roads,'' as in the briefs or as ''state aid highways'' as in P. L. 4657.

▮▮ The road in question was a State-aid road. It was a road improved by the town of Washington with money a part of which was contributed by the State. It was not the purpose of the Legislature to take this highway out of the hands of the town, or to relieve the latter from its statutory duty any further than was necessary to safeguard the money contributed by the State by supervising its expenditure. As we said in *Maynard* v. *Westfield*, 87 Vt. 532, 535, 90 Atl. 504, 506, of P. S. 4005, from which comes P. L. 4586: ''It is true that the statute gives the state the controlling voice in the construction of these roads, but the effect of the statute is not to take them out of the hands

of the towns any further than is necessary for that purpose.'' We agree that the selectmen, in laying out highways, are engaged in a public and governmental undertaking, and are in a real sense officers of the State. We have approved this doctrine in the cases cited by the defendant. But in this work they are in just as true a sense the agents of the town in the matter of engaging surveyors, buying materials, and employing help to construct the road. As long as they act within the scope of their authority in these matters, they bind the town by their contracts. So, here, Stanley represented the town; not because it elected him to any office, nor because it appointed him its agent, nor because its officers recommended his appointment as foreman, but because the State highway commissioner appointed him and thus made him an agent of the town. That such a result could not be accomplished when an individual or a partnership is to be charged, is no reason why it cannot be done when a town is to be charged. The power to thus force an agent upon the municipality arises from the peculiar relation which it bears to the State. The power of the Legislature, constitutional limitations aside, is well-nigh unlimited in what it may do with towns. In its capacity as an agency of the State, a town may have duties placed upon it without its consent, and be compelled to have such duties carried out by officers and agents in the selection of which it has no voice, and over which it has no control. See 63 C. J. 101. If the defendant's theory of the law was to be accepted, the State would be liable for the entire expense of this job, and the town liable for nothing. This is not the purpose or theory of the statute. In essence, it is just as it would be if the State had said to the town, ''If you will go on and improve this highway according to my plans and specifications, under a foreman of my selection, I will contribute so much money to the enterprise.'' By going on with the work, paying the foreman's orders, and receiving the State's allotment, the defendant accepted the proposition.

We hold, therefore, that in making the agreement with the plaintiffs, Stanley was the lawful representative of the defendant and bound it by his engagement.

*Judgment reversed, and cause remanded.*