# Valley Realty & Development, Inc. v. Town of Hartford, et al.

[685 A.2d 292]

No. 95-412

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed August 2, 1996

Motion for Reargument Denied September 25, 1996

*Christopher Dye*, Bradford, for Plaintiff-Appellant.

*Maureen Ragan* of *Welch, Graham & Manby*, White River Junction, for Defendants-Appellees.

**Dooley, J.** Plaintiff Valley Realty & Development, Inc. brought this action against the Town of Hartford, alleging that the board of selectmen violated the open meeting law, 1 V.S.A. § 313, by deciding to purchase a parcel of land in an illegal executive session. The Windsor Superior Court dismissed the claim, holding that plaintiff lacked standing to pursue his open meeting claim because he was not aggrieved by the violation. We hold that the action taken in executive session was ratified by later action of the board taken in public session, and affirm.

The context for this case is set out in *Robes v. Town of Hartford*, 161 Vt. 187, 636 A.2d 342 (1993). On December 29, 1986, the Town of Hartford's board of selectmen passed a resolution imposing a plant impact fee on all residential structures not occupied before January 1, 1987, and on existing residential structures requiring additional demand for sewage services after January 1, 1987. The revenue from this measure was to be placed in the Sewage Impact Fee Fund. *Id.* at 188, 636 A.2d at 344.

In February 1988, plaintiff began paying into the Fund. After having contributed a total of $38,000 to the Fund, plaintiff became part of a lawsuit filed in Windsor Superior Court challenging the legality of the plant impact fee. On December 6, 1991, the court held that the Town had the proper authority to impose the plant impact fee, and that the fee rate was rationally related to the Town's purpose of financing new construction of sewage facilities. *Id.* The court also held that the Town must return funds unused after a reasonable amount of time. *Id.* at 188-89, 636 A.2d at 344. The Town subsequently amended the resolution to allow a refund of funds not used within six years. We affirmed the trial court's determination that the Fund was valid, as long as it provided a refund of funds not spent within six years. *Id.* at 195, 197, 636 A.2d at 348, 349.

In January 1993, while the *Robes* appeal was pending before this Court, plaintiff filed this suit in Windsor Superior Court, alleging that the Town had used the Fund to purchase a parcel of land by a procedure that violated the Vermont open meeting law. The suit sought to void the purchase by the Town of a parcel of land adjoining the Town's sewage treatment plant. The selectmen voted to purchase the land on May 16, 1989 from Jerry and Alda Terino for $150,000 for the purpose of expanding the Town's plant. At a regular meeting of the selectboard of the Town, the board went into executive session and accepted the Terinos' offer to sell by countersigning a letter containing the offer. On May 30, 1989, the Town paid the Terinos $25,000 from its general fund. On July 6, 1989, the Town paid the $125,000 balance to complete the transaction, and the Terinos gave the Town the deed to the property. In late September of 1989, the Town transferred $150,000 from the Sewer Impact Fee Fund to its general fund.

On May 4, 1993, while this action was pending in the superior court, the board voted in open session at a regularly scheduled meeting to ratify the purchase of the Terino property and the expenditure of $150,000 from the Fund for that purpose.

Plaintiff's complaint contended that the decision to purchase the land was done illegally in an executive session, see 1 V.S.A. § 313(a), and that he was damaged by the action because the money in the Fund, if not used for the purchase of the Terino land, would revert to him in part. He sought declaratory relief and a mandatory injunction requiring the Town to put the $150,000 back into the Fund with interest.

On June 28, 1995, the trial court dismissed plaintiff's claim for lack of standing. The court held that the executive session action on May 16, 1989 was in violation of the open meeting law and was void. The court also held that the subsequent revote on May 4, 1993 did not serve to ratify the original illegal action. It held, however, that the May 4, 1993 action was sufficient to bind the municipality prospectively, even though the action did not cure the original open meeting violation. Since plaintiff's entitlement to a refund from the Fund would not accrue until February 1994, six years after the original payments in February of 1988, the court found that plaintiff was not prejudiced by the illegal 1989 action and was prevented by the 1993 action from obtaining any part of the $150,000 paid to the Terinos. The court dismissed plaintiff's complaint because it was not "aggrieved" by the violation of the open meeting law and, therefore, lacked standing.[1] See *id.* § 314(b) (private enforcement action may be brought by person "aggrieved by a violation" of open meeting law).

█ We reach the trial court's result but based on different reasoning. The Town argued to the trial court that the subsequent public vote of the selectboard ratified the original action taken in executive session in 1989. Plaintiff argued in response that the original action was void and could not be revived by a proper vote, and the trial court accepted this position. We conclude that the trial court was in error, and that the 1989 vote was valid, once ratified in public session in compliance with the open meeting law.[2]

---

[1] Because we base our decision on an alternative ground, we do not decide whether plaintiff had standing in this case.

[2] Plaintiff argues that the Town cannot raise this argument, because it did not cross-appeal and the relief is broader than what the Town obtained below. Specifically, it claims that the trial court's order will still require the Town to refund interest to the Fund because the Town illegally withheld the purchase price from the Fund for almost four years. A cross-appeal is unnecessary where the appellee is "content with the final order in the case" but raises alternative grounds to support it. *Staruski v. Continental Tel. Co.*, 154 Vt. 568, 571 n.3, 581 A.2d 266, 267 n.3 (1990). In this case, the Town obtained a judgment in its favor, and no interest was awarded to plaintiff. The Town is

As a general rule, "whatever acts public officials may ˙ do or authorize to be done in the first instance may subsequently be adopted or ratified by them with the same effect as though properly done under previous authority." 10A E. McQuillin, Municipal Corporations § 29.104, at 60 (3d ed. 1990); see also *Stalbird v. Town of Washington*, 106 Vt. 213, 216, 172 A. 623, 624 (1934) (selectmen have "power of ratification" if they act in good faith and for best interests of town as they see it). Ratification does not apply, however, where the contract is "void by reason of noncompliance with some mandatory provision of the law." 10A McQuillin, *supra*, § 29.103, at 54; see *Massachusetts Municipal Wholesale Elec. Co. v. State*, 161 Vt. 346, 353, 639 A.2d 995, 1000 (1994) (municipality cannot ratify contract that is ultra vires). The trial court held that the exception to the power of ratification applies here because the contract was void for noncompliance with the open meeting law.

█ The remedy provision of the open meeting law does not provide that actions taken in violation of the law are void. See 1 V.S.A. § 314(a). Instead, it provides only for "appropriate injunctive relief or for a declaratory judgment" at the request of the attorney general or a person aggrieved by the violation. *Id.* § 314(b). Plaintiff relies, however, on an earlier section of the law, which states: "No resolution, rule, regulation, appointment, or formal action shall be considered binding except as taken or made at such open meeting, except as provided under section 313(a)(2) of this title."[3] *Id.* § 312(a). Plaintiff argues, and the trial court held, that if action is not considered "binding" it is void and cannot be ratified.

In construing a statute, our objective is to implement the intent of the Legislature. *Central Vermont Hosp., Inc. v. Town of Berlin*, 164 Vt. 456, 462, 672 A.2d 474, 478 (1995). If the statute is unambiguous, we first look to the plain, ordinary meaning of the language. *Id.* We look to the whole of the statute and every part of it, its subject matter, the effect and consequences, and the reason and spirit of the law. *Id.*

The plain meaning of the language does not support plaintiff's interpretation. The language says only that a formal action taken in an improperly closed meeting will not be effective, by itself. Cf. *Estate*

---

content with the result and seeks to support this exact result on grounds of ratification. The fact that plaintiff might have obtained further relief, or might still obtain some relief in new litigation, does not create the need for a cross-appeal.

[3] The exception provided by § 313(a)(2) is for "negotiating or securing of real estate purchase options." The trial court held that the exception was inapplicable, and the Town has not contested that point here.

*of Girard v. Laird,* 159 Vt. 508, 513, 621 A.2d 1265, 1268 (1993) (the word "operative" under homestead statute does not render conveyance void, but merely makes it ineffective). This does not mean that action of the public body "will always be void and incurable merely because the topic of the final public action was previously discussed at a private meeting." *Tolar v. School Bd. of Liberty County,* 398 So. 2d 427, 428 (Fla. 1981) (interpreting virtually identical language of Fla. Stat. Ann. § 286.011(1) (West 1991) (amended 1995)). The statute expresses the common requirement of open meeting laws that any formal action, whether or not discussed or initially voted in an executive session, must be voted in a public session to be effective.

This interpretation is also supported by the overall construction of the open meeting law. Open meeting laws now exist in every state. See Note, *The Changing Weather Forecast: Government in the Sunshine in the 1990s — An Analysis of State Sunshine Laws,* 71 Wash. U. L.Q. 1165, 1165 (1993). When the legislature has intended that the effect of a violation of the law is that the action of the public body is void, it has generally stated that directly in a separate section or subsection. See, e.g., Wyo. Stat. § 16-4-403(a) (1995) (action taken at meeting not in conformity with open meeting law is "null and void and not merely voidable"). The language on which plaintiff relies is in a section that defines the public's rights, rather than the remedy for a violation of those rights. It is far from comprehensive — for example, it does not define the effect of a failure to give the required notice of a public meeting. The language chosen is more consistent with a definition of the public right than the creation of the remedy plaintiff seeks.

We are also influenced by the effect and consequences of plaintiff's position. Invalidation of public action is often an "extreme remedy" that may be inappropriate for the underlying violation. See *Liebeskind v. Mayor & Mun. Council,* 627 A.2d 677, 679 (N.J. Super. Ct. App. Div. 1993); see generally Comment, *Invalidation as a Remedy for Open Meeting Law Violations,* 55 Or. L. Rev. 519, 524-25 (1976). "Mechanistic vacation of decisions made in nonconformity with the sunshine law may do more disservice to the public good than the violation itself." *Alaska Community Colleges' Fed'n of Teachers v. University of Alaska,* 677 P.2d 886, 891 (Alaska 1984). Without an effective way of curing a violation, necessary public action may become gridlocked. See *Lawrence County v. Brenner,* 582 A.2d 79, 84 (Pa. Commw. Ct. 1990).

The purpose of open meeting laws is to give public exposure to governmental decision-making. The purpose is not to create "vehicles

for individuals displeased with governmental action to obtain reversals of substantive decisions." *Alaska Community Colleges*, 677 P.2d at 891. Although such reversals may sometimes be a side effect of open meeting law enforcement, we must be careful to administer the law with its purposes and the public interest in mind.

This is exactly the kind of case where a "mechanistic" voiding of the Town's decision would be inappropriate. There is no indication that plaintiff has any debate with the Town's decision to buy the Terino property or its plans to expand the sewage treatment facility. Nor is there any indication that it was in any way affected by the private nature of the decision-making process. Indeed, there is no indication in this litigation that the land purchase decision was controversial or that citizens who wanted to comment on it were excluded from the decision-making process. Plaintiff's strategy is to use the open meeting law violation as a means to the end of requiring that the Fund money be returned to it and other developers, rather than being used for the public purpose.

The original land purchase occurred seven years ago. It was implemented by the public recording of a deed as well as whatever activity the Town has conducted on the land. For all we know, the Town has already expanded the sewage treatment plant on the land that plaintiff now seeks to have returned to the prior owners. Without any participation in this decision, these prior owners would lose the benefit of their bargain and have to return the purchase price. The remedy has little to do with the policies underlying the open meeting law, but has great, negative consequences for the citizens of the Town.

We do not believe that the Legislature intended to bring about these kinds of consequences by making actions taken in violation of the open meeting law void and uncorrectable. By allowing correction at a properly noticed public meeting, we can implement the purposes of the law and minimize undesirable consequences. Consistent with its language, we hold that § 312(a) provides only that actions taken outside of an open meeting, with the one exception provided by the language, are ineffective unless ratified in an open meeting. Once so ratified, however, such actions are effective and binding on the public body. This holding is consistent with the majority of decisions from other jurisdictions. See, e.g., *id.*; *McLeod v. Chilton*, 643 P.2d 712, 717 (Ariz. Ct. App. 1981); *Monroe County v. Pigeon Key Historical Park*, 647 So. 2d 857, 860 (Fla. Dist. Ct. App. 1994); *Board of Educ. Sch. Dist. 67 v. Sikorski*, 574 N.E.2d 736, 740 (Ill. App. Ct. 1991); *Wagner v. Beauregard Parish Police Jury*, 525 So. 2d 166, 170 (La. Ct. App.

1988); *B.P.O.E. Lodge No. 65 v. City Council of Lawrence*, 531 N.E.2d 1254, 1256 (Mass. 1988); *Lawrence County*, 582 A.2d at 84; *Neese v. Paris Special Sch. Dist.*, 813 S.W.2d 432, 436 (Tenn. Ct. App. 1990).

The trial court found that the Town properly reconsidered the original land purchase at a public meeting in full compliance with the open meeting law. Plaintiff does not contest in this Court the finding that the ratification occurred at a legal meeting, arguing instead that the Town could not ratify a void contract. We hold that the selectboard cured the open meeting law violation by ratifying the land purchase in a subsequent open meeting.

*Affirmed.*