2009 VT 6

### Sheldon M. KATZ v. SOUTH BURLINGTON SCHOOL DISTRICT and Gail Durckel

[970 A.2d 1226]

No. 08-071

¶ 1. January 20, 2009. Plaintiff Sheldon M. Katz appeals from a superior court judgment in favor of defendants South Burlington School District and Gail Durckel on his claims that the District violated the open meeting law and public policy in entering into a separation agreement with Durckel, the District's former superintendent, during an emergency executive session. Plaintiff contends the court erred in concluding that: (1) any violations of the open meeting law were cured when the District's Board of Directors ratified the agreement in open session; and (2) the agreement did not violate public policy. We affirm.

¶ 2. The material facts may be summarized as follows. Durckel was employed as the District's superintendent under a contract that was not due to expire until June 2007. On the afternoon of February 5, 2006, however, the Board held a closed-door emergency meeting to discuss an early separation agreement with Durckel. The Board chair and Durckel signed a document entitled "Separation Agreement and General Release" that day. The agreement provided for Durckel's immediate resignation as superintendent while remaining a "nominal[]" employee of the District until June 30, 2006, and recited as consideration that Durckel would receive $104,000. The agreement contained a number of additional sections, including:

a "non-admissions" provision in which the District denied any violation of law; a broad "general release" in which Durckel absolved the District of all claims of any nature; a mutual "non-disparagement" clause, subject to exceptions for the purpose of responding to a subpoena or request for information from state or federal agencies; a section providing for Durckel to submit a letter of resignation citing "personal reasons" and the desire "to spend more time with her family" and for the District to supply Durckel with a letter of recommendation; and a "confidentiality" clause in which the parties agreed not to divulge the terms of the agreement "except to the extent required by law in response to a request made under Vermont's Access to Public Documents Law" or otherwise "required by law."

¶ 3. The following day, February 6, 2006, the Board issued a press release announcing Durckel's resignation, and the Board chair held a news conference, reported in the Burlington Free Press on February 7, 2006, in which she indicated that Durckel would be paid her annual salary of $129,000 through June 30 plus an additional four and a half months, representing the $104,000 settlement amount. Two days later, on February 8, 2006, the Board convened for a regularly scheduled meeting in which it voted — in open session — in favor of a motion to accept Durckel's resignation and to "ratify and confirm" the separation agreement. Although minutes of the meeting do not indicate any discussion of the motion among the thirty members of the public who were present, the public-comment period which followed elicited a number of remarks about the consideration paid to Durckel. The Board chair declined to answer a question from a member of the public about the resignation, however, explaining that she could not discuss personnel issues in public. Shortly thereafter, the Board released

the full text of the separation agreement to the Burlington Free Press.

¶ 4. A little more than a month later, in late March 2006, plaintiff filed the instant lawsuit against the District and Durckel, seeking a declaration that the February 5, 2006, closed-door emergency meeting violated the open meeting law, 1 V.S.A. §§ 310-314. Plaintiff alleged specifically that the meeting was not "necessary to respond to an unforeseen occurrence or condition requiring immediate attention," as required for emergency meetings under § 312(c)(3); that the Board failed to approve the executive session by an "affirmative vote" in open session or "indicate the nature" of the business to be discussed, as required by § 313(a); and that the Board improperly ratified the agreement in executive session, contrary to § 313(a), which provides that "[n]o formal or binding action shall be taken in executive session except actions relating to the securing of real estate options under subdivision (2) of this subsection." In addition, plaintiff alleged that provisions of the separation agreement, particularly the nondisparagement and confidentiality clauses, were void as against public policy.

¶ 5. The parties filed a series of motions seeking dismissal, partial summary judgment, and judgment on the pleadings in which they disputed plaintiff's standing and the justiciability of his claims in view of the Board's subsequent public decision to ratify the actions taken in executive session. In a brief preliminary entry order, the trial court (Judge Joseph) denied Durckel's motion to dismiss, finding that plaintiff had standing as a "person aggrieved" under § 314(b), and that the agreement could be "declared void." Following additional briefing, the court (Judge Katz) entered judgment in favor of the District and Durckel, ruling that while it was "likely" the Board did meet in violation of the open meeting law on February 5, 2006, its subsequent decision to

ratify the contract in open session "cured any open meeting law violation." In addition, the court concluded that plaintiff's public policy claim "lacks merit." This appeal followed.

¶ 6. Plaintiff renews his claim that the Board's emergency meeting in executive session violated provisions of the open meeting law, and disputes the trial court's conclusion that the Board's subsequent ratification of the separation agreement in open session effectively cured the violations. We agree with the trial court's conclusion that any procedural violations of the open meeting law were effectively cured at the public meeting. As we explained in *Valley Realty & Development, Inc. v. Town of Hartford*, 165 Vt. 463, 468, 685 A.2d 292, 295-96 (1996), under § 312(a)[1] of the open meeting law, actions taken outside of an open meeting — with one exception not relevant here — "are ineffective unless ratified in an open meeting. Once so ratified, however, such actions are effective and binding on the public body." Therefore, as we held in that case, unless an agreement endorsed in executive session is absolutely "void by reason of noncompliance with some mandatory provision of the law," a local legislative body may cure an open meeting violation by ratifying the agreement in open session. *Id.* at 466, 685 A.2d at 294 (quotation omitted).

¶ 7. The record reveals that is precisely what occurred here when the Board met at its regularly scheduled public meeting on February 8, 2006, and voted in open

---

[1] This section, in pertinent part, provides: "All meetings of a public body are declared to be open to the public at all times, except as provided in section 313 [executive sessions] of this title. No resolution, rule, regulation, appointment, or formal action shall be considered binding except as taken or made at such open meeting, except as provided under section 313(a)(2) of this title." 1 V.S.A. § 312(a).

session to "ratify and confirm" the separation agreement. Although plaintiff maintains that the Board's vote was ineffective as a cure because the agreement had not been fully disclosed beforehand and the public meeting was "perfunctory," we discern no such infirmities. See *Tolar v. Sch. Bd. of Liberty County*, 398 So. 2d 427, 429 (Fla. 1981) (holding that certain violations of open meeting law were cured where board's subsequent vote in open session represented "independent, final action" and "was not merely a ceremonial acceptance" or "perfunctory ratification"). Regardless of whether the Board satisfied the procedural requirements for an emergency meeting in executive session, there is no question that the Board would have been entitled to discuss, negotiate and even draft the separation agreement in private as a matter involving "[t]he appointment or employment or evaluation of a public officer or employee" under § 313(a)(3). While plainly the Board must ratify such an agreement in open session under § 312(a), we discern no statutory requirement that it specifically disclose or discuss the underlying details at the public meeting. The agreement itself is a public record subject to disclosure, as occurred here, and the voters of the District may exercise their own judgment on its merits through the ultimate exercise in participatory politics, the ballot box.[2]

[2] The District plainly acknowledged that it considered the agreement to be a public record by releasing it to the Burlington Free Press, and case law supports that judgment. See *Trombley v. Bellows Falls Union High Sch. Dist. No. 27*, 160 Vt. 101, 110, 624 A.2d 857, 863 (1993) (narrowly construing "personal documents" exception to public records act to apply only to documents that reveal "intimate details" of a person's life); *Des Moines Indep. Cmty. Sch. Dist. Pub. Records v. Des Moines Register & Tribune Co.*, 487

¶ 8. Plaintiff also contends that certain provisions of the agreement are void as against public policy and therefore not subject to ratification. The trial court summarily rejected the claim, finding that "the open meeting laws, 1 V.S.A. §§ 310-314, as well as the case law interpreting these laws, embody the public policy [p]laintiff aims to protect" and concluding that these policies were "satisfied." Although its meaning is not entirely clear, the trial court appears to have treated plaintiff's public-policy claims as wholly derivative of his open-meeting-law claim. Plaintiff's complaint and pleadings suggest, however, that he was attempting to assert a separate common-law claim, albeit one derived from statutes such as the open meeting law and the Access to Public Records Act, 1 V.S.A. §§ 315-320, that embody open-government policies. Relying on traditional contract-law principles, plaintiff claimed that several specific provisions of the agreement were contrary to these policies and therefore void. See, e.g., *LoPresti v. Rutland Regional Health Servs., Inc.*, 2004 VT 105, ¶ 19, 177 Vt. 316, 865 A.2d 1102 ("Vermont law has long held that courts have the power to void written contract provisions that violate public policy in either their terms or contemplated performance.").

¶ 9. Plaintiff renews this claim on appeal, asserting that the confidentiality, nondisparagement, and severance-pay provisions of the agreement were void as against public policy and therefore could not have been ratified by the Board. As noted, the issue of confidentiality is essen-

N.W.2d 666, 669 (Iowa 1992) (noting that "[c]ourts have generally held that settlement agreements with public bodies are subject to disclosure."); *Guy Gannett Publ'g Co. v. Univ. of Me.*, 555 A.2d 470, 471-72 (Me. 1989) (holding that settlement agreement between university and former coach was public record subject to disclosure).

624

tially moot inasmuch as the Board released the full text of the agreement and thus satisfied any public policy concerns regarding the right to disclosure. As to the nondisparagement clause, some courts have indeed refused to enforce such provisions when they serve to prevent the disclosure of illegal activity. See, e.g., *Bowman v. Parma Bd. of Educ.*, 542 N.E.2d 663, 666 (Ohio Ct. App. 1988) (declining to enforce agreement "purporting to prohibit a school district from disclosing pedophilia on the part of a teacher"). This supports a conclusion that such agreements may be subject to implied exceptions for public policy purposes, however, not that they are categorically void. See, e.g., *Camp v. Eichelkraut*, 539 S.E.2d 588, 598 (Ga. Ct. App. 2000) (construing nondisparagement clause to contain implied exception for disclosure of information regarding investigation of fraud "gives full effect to the legitimate purposes of the confidentiality and nondisparagement provisions without running afoul of the public policies of Georgia"). Plaintiff's claim here is premised upon a vague allegation that the nondisparagement clause may prevent Durckel from "blow[ing] the whistle on the district's corruption." This is plainly insufficient to void the clause on public policy grounds. See *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 457 (5th Cir. 2005) ("The mere possibility that an employer *could* use a non-disparagement clause to hide illegal activity is . . . insufficient to void the clause on grounds of public policy."). Plaintiff's final argument, that public policy was violated by the expenditure of taxpayer money "without explaining how and why their money was spent," is simply a restatement of his claim, rejected earlier, that the vote in open session failed to provide adequate discussion and disclosure of the agreement and therefore was inadequate to cure the alleged open-meeting violations.

Accordingly, we find no basis to disturb the judgment.[3]

*Affirmed.*

Motion for reargument denied March 10, 2009.

---

[3] Our holding renders it unnecessary to address defendants' argument that the trial court erred in ruling that plaintiff had standing to enforce provisions of the open meeting law or challenge the separation agreement. See *Valley Realty*, 165 Vt. at 465 n.1, 685 A.2d at 293 n.1 (although trial court dismissed plaintiff's open-meeting-law claim on the ground that it lacked standing, we affirmed on the alternative ground that any violation was cured by the Board's subsequent ratification in open session, thus rendering it unnecessary to "decide whether plaintiff had standing in this case").