NOTICE:  This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports.  Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2022 VT 34

No. 21-AP-290

| | |
|---|---|
| Theodore de Macedo Soares | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Caledonia Unit, |
| | Civil Division |
| | |
| Barnet Fire District #2 et al. | June Term, 2022 |

Mary Miles Teachout, J.

Theodore de Macedo Soares, Pro Se, Barnet, Plaintiff-Appellant.

Devin McLaughlin of Langrock Sperry & Wool, LLP, Middlebury, for Defendant-Appellee
  Barnet Fire District No. 2, Prudential Committee.

Elijah R. Bergman of Larson & Gallivan Law, PLC, Rutland, for Defendant-Appellee
  Vermont Municipal Bond Bank.

PRESENT:  Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.

¶ 1.     **WAPLES, J.**  Plaintiff challenges the process by which defendant, the Prudential Committee for Barnet Fire District No. 2, obtained approval for a municipal bond.  The trial court denied plaintiff's request to invalidate the bond vote.  It found that although the Prudential Committee violated the Open Meeting Law during the process, the defect was the result of oversight, inadvertence, and mistake, and it was cured by the Committee's validation resolution.  The court denied plaintiff's remaining requests for relief as well.  Plaintiff argues on appeal that the court erred in: (1) concluding that the Open Meeting Law violations could be cured under 24 V.S.A. § 1757 or 17 V.S.A. § 2662; (2) failing to address his request for a new trial; (3) denying

his attorney-fee request; and (4) dismissing his claim regarding curb-stop fees. We affirm the court's judgment in favor of the Committee and remand to the trial court to enter final judgment in favor of defendant Vermont Municipal Bond Bank as well.

## I. Procedural History

¶ 2. The record indicates the following. The District has long had unsafe drinking water. To address this issue, the District's legislative body—the three-member Prudential Committee—sought to acquire the District's private water system and pursue state funding for its rehabilitation. By October 2013, the Prudential Committee members had agreed to seek a loan from the Vermont Drinking Water State Revolving Fund (SRF loan), which required issuance of a municipal bond.

¶ 3. To secure approval for the bond, the Prudential Committee was required by statute to take several steps. First, it needed to determine

> at a regular or special meeting . . . by resolution passed by a vote of a majority of those members present and voting, that the public interest or necessity demands improvements, and that the cost of the same will be too great to be paid out of the ordinary annual income and revenue.

24 V.S.A. § 1755(a)(1). This is called a "necessity resolution." It was then required to "order the submission of the proposition of incurring a bonded debt to pay for public improvements to the qualified voters of such municipal corporation at a meeting to be held for that purpose." Id. "The warning calling the meeting [must] state the object and purpose for which the indebtedness is proposed to be incurred, the estimated cost of the improvements and the amount of bonds proposed to be issued." Id. § 1755(a)(2). The warning must also "fix the place where and the date on which the meeting shall be held and the hours of opening and closing the polls." Id.

¶ 4. The law includes a method by which defects in the bond process can be cured. After voters have approved the issuance of a bond and it is discovered that "such proceedings are defective because of failure to comply with any of the statutory requirements," the legislative body

2

may cure a defect or omission through a resolution "by a vote of two-thirds of all its members at a regular or a special meeting called for that purpose, stating that the defect was the result of oversight, inadvertence, or mistake of law or fact." Id. § 1757(a). "When such omission has been so supplied by such resolution, all bonds . . . shall be as valid as if the statutory requirement had been complied with." Id. § 1757(b). The validation process is designed to prevent "the frustration and defeat of [the] vote of the electorate" in recognition that "the efforts of municipal government to accomplish public improvements are beset with legal intricacies" and "the fiscal affairs of our municipalities are rarely administered by legal technicians." Conn v. Town of Brattleboro, 120 Vt. 315, 322, 140 A.2d 6, 10 (1958).

¶ 5.    In this case, the Prudential Committee did not strictly adhere to the statutory process for securing approval of a bond. The court found that the Committee members agreed on a plan to purchase and rehabilitate the drinking-water system and obtain funding through an SRF loan with a municipal bond, and held many meetings on this topic. The Committee did not have a motion before it, however, nor did it vote on a specific necessity resolution tailored to comply with the first requirement of 24 V.S.A. § 1755(a)(1). Instead, the Committee, composed of lay persons, agreed on the plan and proceeded to prepare for a bond vote.

¶ 6.    At its December 2013 meeting, the Committee voted to set a date for "the Annual Meeting and Bond Vote" in January 2014 with individual notice provided to taxpayers via postcard. The Committee, on motion, voted to set the bond amount at $750,000. The agenda was prepared and postcards mailed to District voters. The notice of annual meeting included an article that read: "Shall the voters of Barnet Fire District #2 authorize the Prudential Committee to apply for a loan from the Drinking Water State Revolving Loan Fund and borrow an amount not to exceed $750,000.00 for the purchase of and improvements to the privately owned Barnet Water System Inc."

¶ 7.     After consulting with an experienced bond attorney, the Committee learned that it could not hold the bond vote at the January 2014 meeting due to inadequate notice.  The bond attorney suggested that, at the scheduled and warned meeting, the Committee could set new dates for a properly noticed informational meeting and subsequent bond vote, which it did.  The attorney believed that the Committee had satisfied "in substance" the requirements of the necessity resolution because he understood that all Committee members agreed on the plan and terms of the bond to be submitted to the members for a vote.

¶ 8.     At the January 2014 meeting, the article concerning the bond was tabled due to the procedural errors in its posting.  The Committee members explained and discussed with attendees the purchase of the water system and the bond vote proposal.  Following the meeting, the bond attorney prepared a new "Warning and Article," which stated erroneously that its contents were adopted and approved at the January 2014 Committee meeting.  The warning notified District voters of the upcoming bond vote and an informational meeting.  In February 2014, the article, with its "general obligation bond" provision, was approved by a vote of thirty to six.  Plaintiff did not assert any claim of irregularity in the conduct of this vote or the manner in which the warning was posted.

¶ 9.     Plaintiff disagreed with the plan to purchase and rehabilitate the drinking-water system; he advocated that District residents drill their own wells.  In April 2014, the Committee instituted curb-stop fees, requiring property owners who abandoned the water system after December 31, 2013, to pay a fee for having a municipal-water valve servicing their property, regardless of whether they used it.

¶ 10.     Plaintiff filed the instant suit in June 2014.[1]  The Committee thereafter took steps to ratify the bond vote and cure any procedural errors.  At a Special Meeting in June 2014, the

---

[1]  Plaintiff sued both the Prudential Committee and the Vermont Municipal Bond Bank. The court dismissed the claims against the bank in June 2020.  In its brief, the bank indicates that

4

Committee voted unanimously to approve and adopt a validation resolution that sought to ratify, validate, and confirm "any claim of irregularity" related to the water system, related loans, the need for improvements, or the call, notice, and conduct of the February 19 meeting. When that attempt was deemed unsuccessful by the trial court on summary judgment, the Committee in April 2015 unanimously adopted another validation resolution in which it acknowledged that a preliminary finding of necessity did not occur in an open meeting as required by 24 V.S.A. § 1755(a), but sought to "avail itself of the provisions of 17 V.S.A. § [2662] and 24 V.S.A. § 1757 in order to correct the above-identified omission."[2] It adopted by unanimous vote a resolution that "the actions of the voters at the February 19, 2014 special meeting of the Barnet Fire District No. 2 are hereby ratified, validated and confirmed."

¶ 11. The trial court ruled on partial summary judgment in January 2020 that "the second validation resolution complied with the statutory requirements in a manner in which the first validation did not." Plaintiff argued, however, that no cure was available under 24 V.S.A. § 1757(a) because the defects did not arise from "oversight, inadvertence, or mistake of law or fact" but instead represented a "wholesale attempt to circumvent an open meeting." The court found that, to the extent that plaintiff relied on an allegation of bad faith to void what otherwise appeared to be the Committee's statutorily authorized and valid cure of an acknowledged defect, plaintiff needed to establish specific facts to support such a claim at an evidentiary hearing. The court emphasized that plaintiff's request to void the bond vote represented an "extreme remedial

---

it was omitted from the final judgment order by oversight and it asks that final judgment be entered in its favor. Plaintiff agrees that such relief is warranted. We remand to the trial court to enter final judgment in the bank's favor.

[2] The Committee cited 17 V.S.A. § 2667, which the court noted was inapplicable and appeared to be clerical error, with the intended citation being 17 V.S.A. § 2662. The latter provision is titled "Validation of municipal meetings" and provides for validation of municipal action when there has been an omission or noncompliance with requirements as to notice or warning of meetings and the action is otherwise legal.

measure," Putter v. Montpelier Pub. Sch. Sys., 166 Vt. 463, 467, 697 A.2d 354, 357 (1997), available only in the most extraordinary situations.

¶ 12.    Following a two-day trial, the court found in an April 2021 decision that the Prudential Committee had cured the defects in the bond process.  The defects, it explained, were that the Committee did not properly adopt a necessity resolution at a meeting before the bond vote and that the warning and proposal for a bond vote was adopted at a districtwide meeting rather than at a Committee meeting.  The court found that these defects arose from oversight, inadvertence, and mistakes of law and fact on the part of both the Committee members and the bond attorney.

¶ 13.    The court explained that the Committee had acted in a highly transparent manner throughout the process and it did not act in bad faith.  The Committee members were public-spirited lay volunteers grappling with a project that eventually called for compliance with statutory requirements with which they were unfamiliar.  While they failed to appreciate the need to adopt a necessity resolution before proceeding to a bond vote, they had in fact addressed each of the elements required for such a resolution during their regular meetings and they sought to maximize public participation in the process.  The Committee also sought out and followed the advice of counsel.

¶ 14.    The Committee members readily admitted their error in signing documents that misstated what occurred at the January 2014 meeting and they were clear about the reason: there was nothing in the documents that had not already been agreed on at open meetings and they were following the directions of the attorney they hired to guide them through the process.  It was not apparent to them that they could not take action as a Prudential Committee during a districtwide annual meeting, even though their actions were open to more scrutiny than at regular Prudential Committee meetings.  The bond attorney also erred by failing to advise the Committee before the January 2014 meeting that it should formally adopt a necessity resolution at that meeting as well

6

as the terms of the warning and bond proposal; the attorney should have prepared appropriate documentation in advance rather than after the fact. The court found no intent to circumvent any requirements of law or procedure, and no attempt to conceal any action. Given the confluence of errors cited above, and mindful of the clarity and transparency provided by the Committee throughout the process, the court found that the Committee members and their attorney simply overlooked the formalities required by the Open Meeting Law and the bond-vote statutes.

¶ 15. The court found that plaintiff was entitled to a declaratory judgment that the Committee violated the Open Meeting Law by failing to adopt a necessity resolution and a warning and resolution for a bond vote at a public meeting as required by 24 V.S.A. § 1755. It found the "second validation" sufficient to cure the defect, however, and it therefore denied plaintiff's request to invalidate the bond vote.

¶ 16. Plaintiff moved for reconsideration and requested attorney's fees, and the court denied both requests. Plaintiff then asked the court to amend its judgment to explicitly decide if an Open Meeting Law violation could be cured by validation of a faulty bond vote. The court denied that request as well. This appeal followed.

II. Arguments on Appeal

A. Validation under 24 V.S.A. § 1757

¶ 17. We first consider plaintiff's assertion that the defects here could not be cured under 24 V.S.A. § 1757. According to plaintiff, § 1757 was not intended to encompass violations of the Open Meeting Law and such violations can be cured only by "a proper public meeting and . . . an independent final action by vote." He contends that a new vote would lead to a different result.

¶ 18. "The interpretation of a statute is a question of law that we review de novo." Hayes v. Hayes, 2018 VT 102, ¶ 9, 208 Vt. 380, 198 A.3d 1263 (quotation omitted). "When construing statutes, our primary goal is to give effect to the Legislature's intent" and "[t]he definitive source of legislative intent is the statutory language, by which we are bound unless it is uncertain or

7

unclear." In re Bennington Sch., Inc., 2004 VT 6, ¶ 12, 176 Vt. 584, 845 A.2d 332 (mem.) (citations omitted). We "presume that all language in a statute was drafted advisedly, and that the plain ordinary meaning of the language used was intended." Doyle v. City of Burlington Police Dep't, 2019 VT 66, ¶ 10, 211 Vt. 10, 219 A.3d 326. (quotation omitted). Section 1757 is a remedial statute and it is therefore entitled to a liberal construction. Conn, 120 Vt. at 321, 140 A.2d at 9.

¶ 19. Section 1757, entitled "Validation," specifically provides:

> (a) Whenever the qualified voters of a municipal corporation . . . have voted by the requisite majority to authorize issuance of bonds to pay for any public improvement, and such proceedings are defective <u>because of failure to comply with any of the statutory requirements therefor</u>, although the required length of notice and notice of the purpose of such meeting has been had, such omissions may be cured by a resolution of such legislative branch by a vote of two-thirds of all its members at a regular or a special meeting called for that purpose, stating that the defect was the result of oversight, inadvertence, or mistake of law or fact.

> (b) When such omission has been so supplied by such resolution, all bonds or other financing within the terms of the action of the qualified voters shall be as valid as if the statutory requirement had been complied with.

24 V.S.A. § 1757 (emphasis added.)

¶ 20. We held in Conn that this language "affords a remedy for the validation and correction of technical irregularities incident to municipal elections called for the purpose of voting and financing public improvements." 120 Vt. at 321, 140 A.2d at 9. It was enacted to ameliorate the hardship suffered by municipalities that deviated from the exact statutory requirements relating to public improvements. Id. Before the enactment of this provision, "[t]he consequence of defective notice was the defeat of the vote of the electorate," id., an outcome that "represents one of the more extreme remedial measures available to a court" and is "profoundly destabilizing to the local political process." Putter, 166 Vt. at 467, 697 A.2d at 357.

8

¶ 21.   In its initial form, the validation provision "reached only defects arising from a failure to strictly comply" with the requirements for a necessity resolution.  Conn, 120 Vt. at 321, 140 A.2d at 10.   The Legislature then "substantially enlarged" "the scope of the curative provisions" to expressly include the "failure to comply with any of the statutory requirements therefor," as long as "the required length of notice and notice of the purpose of said meeting has been had."  Id. (quotation omitted).  The Legislature sought to prevent "the frustration and defeat of vote of the electorate.  At the same time, reasonable restraints were preserved by the requirement that the vote, to be protected, must be by the requisite majority after the purpose of the meeting had been published for the required length of time."  Id. at 321, 140 A.2d at 10.

¶ 22.   The statute plainly states that a validation vote will cure a municipality's "failure to comply with any of the statutory requirements required" for obtaining a bond, 24 V.S.A. § 1757(a) (emphasis added), with the "condition precedent" that the "vote, to be protected, must be by the requisite majority after the purpose of the meeting ha[s] been published for the required length of time."  Conn, 120 Vt. at 322, 140 A.2d at 10.[3]  The law is broadly written and it contains no exception for Open Meeting Law violations, including the particular violations at issue here. Compliance with the Open Meeting Law is a statutorily required part of the bond-approval process and it follows that violations can be cured through the validation process set forth in § 1757(a).

¶ 23.   The court found that the defects here were "the result of oversight, inadvertence, [and] mistake[s] of law [and] fact," 24 V.S.A. § 1757(a), and this finding is supported by the record. The Committee passed a resolution to cure the defect and, by statute, the bond is therefore "as valid as if the statutory requirement[s] had been complied with."  Id. § 1757(b).  The result— allowing the public vote to stand—serves the purpose of the statute.  The validation law is designed to allow municipalities to correct these precise types of errors—mistakes and oversights occurring

_____

[3] Plaintiff did not assert any claim of irregularity in the conduct of the vote below or the manner in which the warning was posted and the condition precedent is satisfied.

9

as part of a complicated process being overseen by laypeople—and thereby prevent the disruption that would be caused by invalidation of the public vote.

¶ 24.    Our conclusion is also consistent with the ratification process allowed for Open Meeting Law violations more generally.  "As a general rule, 'whatever acts public officials may do or authorize to be done in the first instance may subsequently be adopted or ratified by them with the same effect as though properly done under previous authority.' "  Valley Realty & Dev., Inc. v. Town of Hartford, 165 Vt. 463, 466, 685 A.2d 292, 294 (1996) (quoting 10A E. McQuillin, Municipal Corporations § 29.104, at 60 (3d ed. 1990)).

¶ 25.    In Valley Realty, we rejected the argument that municipal action taken in violation of the Open Meeting Law rendered such action void.  See id. at 466, 685 A.2d at 294 (explaining that "[t]he remedy provision of the open meeting law does not provide that actions taken in violation of the law are void").  We held that a public body need only ratify at an open meeting actions taken in violation of the Open Meeting Law to ensure that such actions are "effective and binding."  Id. at 468, 685 A.2d at 296.  We found this conclusion consistent with legislative intent, recognizing that "invalidation of public action is . . . an 'extreme remedy' " and that mechanically vacating decisions "made in nonconformity with the sunshine law may do more disservice to the public good than the violation itself."  Id. (quotations omitted).  Allowing municipalities to cure violations prevents "necessary public action" from becoming "gridlocked."  Id.  We emphasized that "[t]he purpose of open meeting laws is to give public exposure to governmental decision-making," "not to create vehicles for individuals displeased with governmental action to obtain reversals of substantive decisions," and we cautioned that the law should be administered "with its purposes and the public interest in mind."  Id. at 467-68, 685 A.2d at 295 (quotation omitted).

¶ 26.    These considerations are equally relevant here.  The trial court found that the Prudential Committee consistently attempted to promote the interests underlying the Open Meeting Law and it acted in a transparent way throughout this process.  It provided voters with

10

more notice—via individual postcards—than was required. It discussed all of the elements of the necessity resolution at public meetings and took action at the annual meeting (rather than a Committee meeting), which subjected their actions to more scrutiny than would have been present at a regular Prudential Committee meeting. The Committee, and its counsel, made mistakes in following the letter of the law but that is precisely why the validation provision exists: to allow corrections to be made to prevent "the frustration and defeat of [the] vote of the electorate." Conn, 120 Vt. at 321, 140 A.2d at 10. The violations should not be used as a vehicle for obtaining a different substantive result, as plaintiff urges. The court did not err in finding that the Committee cured the statutory defects involved in the process here.

¶ 27. None of plaintiff's arguments persuade us otherwise. Plaintiff contends that the bond process must begin anew. He reiterates his assertion that this was not the type of error that could be cured under 24 V.S.A. § 1757, but we have rejected that argument as a matter of law. Plaintiff also asserts that the only statutory violations that can be cured under § 1757(a) are those that existed in 1941, which is when the language in what is now § 1757(a) was enacted. The law is not so stagnant. We are asked to implement the Legislature's intent looking at the plain language that it used. Plaintiff's proffered interpretation is at odds with the plain language of the statute, which reaches "any" statutory violation, and it is inconsistent with the harm that the Legislature sought to prevent, which is the drastic remedy of invalidating a public election.

¶ 28. Having concluded that the cure offered by § 1757 encompasses Open Meeting Law violations, we need not consider the applicability of 17 V.S.A. § 2662 and its cure provision to the facts here. We thus do not reach plaintiff's argument that the trial court erred in its discussion of § 2662 in its decision denying plaintiff's motion to alter and amend.

### B. Request for New Trial

¶ 29. Plaintiff next asserts that the court erred by failing to explicitly address his request for a new trial. In his motion for reconsideration, and again in his motion to amend, plaintiff asked

11

for "a new trial to admit into evidence [his] Exhibit 16 and related testimony that was offered at trial as proof of the harm caused to the Plaintiff and his Barnet Fire District #2 community by the Prudential Committee's violations of the Vermont Open Meeting Law but denied by this Court."

¶ 30.    The court denied plaintiff's motions and plaintiff fails to show any abuse of discretion.  See Constr. Drilling, Inc. v. Eng'rs Constr., Inc., 2020 VT 38, ¶ 25, 212 Vt. 323, 236 A.3d 193 (explaining that Court reviews rulings on motion for new trial for abuse of discretion). Plaintiff references evidence and testimony that the trial court apparently excluded at trial.  He provides no transcript of the proceedings below and we have no record on which to evaluate his claim that the court should have admitted such evidence.  See V.R.A.P. 10(b)(1) ("By failing to order a transcript, the appellant waives the right to raise any issue for which a transcript is necessary for informed appellate review."); In re S.B.L., 150 Vt. 294, 307, 553 A.3d 1078, 1087 (1988) (explaining that appellant bears consequences of failing to order transcript and without transcript Court assumes that evidence supports trial court's findings).  He fails to show why the exclusion of such evidence entitled him to a new trial and we find no error in the court's denial of his post-judgment motions that included this request for relief.

## C.  Attorney's Fees

¶ 31.    Plaintiff next challenges the court's denial of his attorney-fee request.  On this point, the trial court found as follows.  Plaintiff sought attorney's fees and costs incurred since the inception of this litigation, relying on 1 V.S.A. § 314.  The court found, as a matter of law, that such fees were unavailable because the statutory language on which plaintiff relied became effective after he filed suit.  Even if the statute applied in spirit, the court found that plaintiff incurred no relevant attorney's fees.  The court further found that an attorney-fee award in this case would not serve the purposes of the Open Meeting Law.

¶ 32.    The court elaborated on all of these points in its decision.  It explained that the newly enacted attorney-fee provision outlined steps municipalities could take to avoid paying

attorney's fees. This escape-valve provision is triggered by a pre-suit "written notice" alleging "a specific violation" and requesting "a specific cure of such violation." 1 V.S.A. § 314(b). The court found that the statute was plainly not intended to apply to lawsuits filed under the prior version of the law as municipalities could not take the steps outlined by statute to avoid an attorney-fee award. The law did not indicate, moreover, that it would apply to lawsuits filed before its effective date.

¶ 33.    Even beyond that, the court explained, plaintiff did not incur any attorney fees within the scope of § 314. It found that the Open Meeting Law defect plaintiff identified was fully resolved long before plaintiff incurred any attorney fees. The court further found that the Committee acted promptly to cure the defect, which was the intent underlying the attorney-fee provisions in the statute.

¶ 34.    Plaintiff offers no persuasive basis to overturn this decision. He again cites 1 V.S.A. § 314 in support of his claim for attorney's fees. He contends that this law, enacted after he filed suit, should apply retroactively because it is "solely procedural" or "remedial in nature" and it does not interfere with any "vested or substantive rights." Smiley v. State, 2015 VT 42, ¶ 17, 198 Vt. 529, 117 A.3d 441. He contends that the Committee still has not complied with the Open Meeting Law.

¶ 35.    We agree with the trial court that the statutory provisions enacted after plaintiff filed suit do not apply here. "Vermont statutory law and case law normally prohibit retrospective application of new and amended statutes." Agency of Nat. Res. v. Towns, 173 Vt. 552, 555, 790 A.2d 450, 455 (2001) (mem.) (citing 1 V.S.A. §§ 213, 214). "Retrospective laws are defined as those which take away or impair vested rights acquired under existing laws, or create a new obligation, impose a new duty, or attach a new disability in respect to transactions or considerations already past." Id. (quotation omitted). "Statutory changes that are procedural in nature, as opposed

13

to those that affect preexisting rights and obligations . . . may be applied retrospectively." Id. at 556, 790 A.2d at 456 (quotation omitted).

¶ 36.    The new language in § 314 is not solely remedial or procedural, as plaintiff asserts. It creates a substantive change in the law. It sets forth a process by which municipalities could become obligated to pay attorney's fees for violations of the Open Meeting Law where they had no such exposure before. See generally 1 V.S.A. § 314(b)-(d). It also includes a process by which municipalities can avoid such obligations. Putting aside that the Legislature expressed no intent that this law apply retroactively, it would be obviously unfair to apply it here to support an award of attorney's fees when the municipality had no ability to take the steps to avoid liability under the statute. See Summers v. Dep't of Justice, 569 F.3d 500, 504, 505 (D.C. Cir. 2009) (similarly concluding that retroactive application of new attorney-fee provision was inappropriate as it "would impose an unforeseeable obligation upon the defendant by exposing it to liability for attorneys' fees for which it clearly was not liable before the passage of the [new law]" and "[t]here [was] no clear evidence the Congress intended [the law] to apply retroactively" (quotation marks omitted)). The new statutory process was not applicable, it was not followed, and it cannot provide the basis for an attorney-fee award. Given our conclusion that § 314 does not apply, we need not consider the additional rationales offered by the trial court in support of its decision to deny plaintiff's request for attorney's fees.

### D.  Curb-Stop Fees

¶ 37.    Finally, plaintiff argues that the court erred in dismissing his claim regarding curb-stop fees. Plaintiff argued below that the Committee's curb-stop policy unconstitutionally favored a subsection of the community. The court did not address this argument in its March 2015 summary-judgment decision because plaintiff raised it for the first time in his opposition to summary judgment. Plaintiff also offered no legal support for this claim and the court concluded that plaintiff failed to establish a valid legal theory that would entitle him to relief.

14

¶ 38. The court revisited this claim in August 2015 in response to plaintiff's motion for reconsideration. It noted that it had dismissed the curb-stop claim sua sponte and would thus reconsider its decision. It found that, contrary to plaintiff's assertions, Vermont law empowered municipalities to establish ordinances relating to a municipal water system, "including the authority to require existing customers to remain connected to such municipal system, and to impose penalties for the breach thereof, and enforce the same." 24 V.S.A. § 3315. Plaintiff appeared to concede that the current ordinance regarding the curb-stop fees had been adopted according to the statutorily required procedures. The court was equally unpersuaded by plaintiff's attempt to raise a constitutional issue. It explained that the enactment of a law inevitably impacted segments of the population in different ways and these distinct results did not, in themselves, amount to "unconstitutional favoritism." Without more than just a bare allegation that the water ordinance "discriminate[d]" between those leaving the water system "versus those who already left," and in the absence of any disputed facts as to the propriety of the enactment of the water ordinance, the court found plaintiff's claim to be meritless.

¶ 39. Plaintiff argues on appeal that the District has no statutory authority to charge a curb-stop fee. He maintains that 24 V.S.A. § 3315 authorizes a municipality to require people to "stay on the water system and pay for the water they use" but it does not authorize them to allow people to leave the water system and then charge them for a closed valve near their property.

¶ 40. We reject this argument. Section 3315 provides that "municipal corporation[s] shall have the power to make, establish, alter, amend, or repeal ordinances, regulations, and bylaws relating to the matters contained in this chapter," concerning "[w]aterworks", which are "not inconsistent with law, including the authority to require existing customers to remain connected to such municipal system, and to impose penalties for the breach thereof, and enforce the same." The imposition of a curb-stop fee is consistent with the authority granted by the plain language of statute. The authority to require existing customers to remain connected to the municipal water

system necessarily encompasses the power to charge a fee to those who seek to leave that system.

The court did not err in rejecting plaintiff's curb-stop fee claim.

We affirm the court's judgment in favor of the Prudential Committee and remand to the trial court to also enter final judgment in favor of defendant Vermont Municipal Bond Bank.


FOR THE COURT:


_____
Associate Justice

16