Winterset, Inc. v. Commissioner of Taxes
Kenclif Construction, Inc. v. Commissioner of Taxes
[475 A.2d 231]
Nos. 82-560 and 82-576
Present: Billings, C.J., Hill, Underwood, Peck and Gibson, JJ.
Opinion Filed March 2, 1984

*Alexander W. Scherr* of *Downs Rachlin & Martin,* St. Johnsbury, for Plaintiffs-Appellants.

*George E. Brooks* and *Elizabeth D. Anderson,* Montpelier, for Defendant-Appellee.

**Hill, J.** The claims of taxpayers Winterset, Inc., and Kenclif Construction, Inc., were consolidated for purposes of appeal and are before this Court pursuant to V.R.A.P. 5(a). The question presented is as follows:

> Whether the Vermont net income of a corporate taxpayer under 32 V.S.A. § 5811(18) includes the amount of the addback mandated by I.R.C. § 280C of wage and salary expenses which qualify for the federal New Jobs Credit (I.R.C. § 48).

We agree with the taxpayers that this question should be answered in the negative.

Under the Tax Reduction and Simplification Act of 1977, Pub. L. No. 95–30, § 202, 91 Stat. 126 (1977) (hereinafter referred to as the 1977 Act), a "new jobs credit" was made available to employers for tax years 1977 and 1978. I.R.C. § 44B (1978). If the employer elected the new jobs credit, it would compute the amount of business deduction allowed for wages and salaries paid, I.R.C. § 162 (1978), by reducing its wage and salary deduction (§ 162 deduction) by an amount equal to the amount of the new jobs credit taken. I.R.C. § 280C(b). This reduction in the § 162 deduction is referred to as the wage and salary addback.

In 1978, Congress passed the Revenue Act of 1978, Pub. L. No. 95–600, § 321, 92 Stat. 2763 (1978) (hereinafter referred

to as the 1978 Act), providing for a "targeted jobs credit" to become effective following the expiration of the new jobs credit on December 31, 1978. As with the new jobs credit, an employer who elected the targeted jobs credit under the 1978 Act was required to apply the wage and salary addback to its § 162 deduction.

For tax years 1977 and 1978, the taxpayers in this case, Winterset, Inc., and Kenclif Construction, Inc., elected to apply the new jobs credit against their federal taxes. Accordingly, pursuant to I.R.C. § 280C, the taxpayers reduced their § 162 deductions by including the wage and salary addback.

On their Vermont returns for 1977 and 1978, the taxpayers reported their Vermont net income to be their federal taxable income, which included their wage and salary addbacks. Subsequently, in 1981, the taxpayers filed amended Vermont returns, each claiming refunds on the ground that since Vermont did not have a state new jobs credit, they were not required to reduce their § 162 deductions and increase their Vermont net incomes by the amount of the federal credit. The Department of Taxes denied the taxpayers' refund claims. Pursuant to 32 V.S.A. § 5883, the taxpayers appealed the Department's denials to the Commissioner of Taxes, who upheld the denials. These appeals followed.

We agree with the taxpayers that *In re Knosher*, 139 Vt. 285, 428 A.2d 1104 (1981), is dispositive of this case. In *Knosher*, an individual taxpayer elected to apply the new jobs credit against his federal tax liability for 1977. As required by I.R.C. § 280C, his § 162 deduction reflected the wage and salary addback. In calculating his 1977 Vermont tax liability, however, the taxpayer reported his federal tax liability as though he had not claimed the new jobs credit. Thus, by claiming the full amount of his § 162 deduction, he reduced his Vermont tax liability. In approving the procedure followed by the taxpayer, we ruled that the amount a taxpayer reports as his federal taxable income is not necessarily binding on the taxpayer or the state in calculating the taxpayer's state income tax liability, and that to disallow the taxpayer his full § 162 deduction "would overstate the taxpayer's income, and Vermont in effect would be taxing the federal new jobs credit." *In re Knosher, supra,* 139 Vt. at 287, 428 A.2d at 1105.

The Court in *Knosher* also noted that in 1980 the Vermont legislature amended the definition of individual income to provide, beginning in tax year 1979, for "the very relief sought by the taxpayer." *Id.* at 288, 428 A.2d at 1105. That amendment stated that Vermont income shall not include wages that are required to be included as income "as provided in section 280(c) of the United States Income Tax Code which relates to federal tax credit incentive work programs." 32 V.S.A. § 5823(a)(5). In *Knosher* we found that this legislative change represented " 'a recognition that the amendment embodies and clarifies its previous intent.' " *Id.* (quoting *F. W. Woolworth Co.* v. *Commissioner of Taxes,* 133 Vt. 93, 101, 328 A.2d 402, 407 (1974) (Larrow, J., dissenting)).

In 1980 the legislature made a similar amendment to the definition of corporate income. That amendment stated that Vermont net income shall not include "the amount of income which results from the required reduction in salaries and wages expense for corporations claiming the Targeted Job [credit]." 32 V.S.A. § 5811(18). This amendment was given retroactive effect to cover taxable years beginning after January 1, 1979.

We see no reason why the legislative intent found by this Court in the 1980 amendment to the definition of individual income should not apply to the 1980 amendment to the definition of corporate income. Although the amendment to the definition of individual income included all "federal tax credit incentive work programs," but the 1980 amendment to the definition of corporate income mentioned only the targeted jobs credit, we think the Vermont 1980 amendment to the definition of corporate income was intended to cover both the targeted jobs credit and the new jobs credit of the 1977 Act. Both credit programs were intended to encourage the hiring of new employees. The targeted jobs credit program of the 1978 Act did not supplant the new jobs credit program; rather, it was an "extension" of the new jobs credit program of the 1977 Act, and retained certain provisions of the new jobs credit program. S. Rep. No. 95–1263, 95th Cong., 2d Sess., reprinted in 1978 U.S. Code Cong. & Ad. News 6890, 6894. Also, a transitional rule was provided for those employers whose fiscal year began in 1978 and ended in 1979 so that

a combined computation of both the 1978 new jobs credit and post-December 31, 1978, targeted jobs credit produced the amount of the job credit allowed to those 1978–1979 fiscal year employers. *Id.* at 6895. In addition, both job credit programs required the identical wage and salary addback mechanism to an employer's § 162 deduction. This legislative history compels the conclusion that the new jobs credit and targeted jobs credit were compatible stages of a unified, federal taxing scheme designed to benefit employers who increased their work force by hiring new employees.

*The certified question is answered in the negative.*