## Town of Rutland v. City of Rutland, East Mountain Land Company and John A. Russell Corp.

[743 A.2d 585]

No. 97-430

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed October 22, 1999

*Mark L. Sperry* and *Kevin E. Brown* of *Langrock Sperry & Wool*, Middlebury, for Plaintiff-Appellee.

*Paul S. Kulig* and *Katherine G. Buchanan* (On the Brief) of *Keyser, Crowley, Carroll, George & Meub, P.C.*, Rutland, for Defendants-Appellants.

**Johnson, J.** Defendants East Mountain Company and John A. Russell Corporation appeal the superior court's ruling that a water line under Gleason Road in the Town of Rutland is the property of the Town. John A. Russell Corp. (Russell) was the general contractor for a development owned by East Mountain Company and installed the water line at issue. After a dispute with the Town over whether it would compensate Russell/East Mountain for the line, East Mountain agreed to sell the water line to the City of Rutland. The trial court declared the line belonged to the Town. We affirm.

In 1985, Congregational House, Inc. began construction of ninety-nine condominium units on forty-four acres located in the Town, on the north side of Gleason Road. Russell was engaged as the general contractor. Congregational House abandoned the project in 1986. East Mountain Company, owned by the individual John A. Russell, bought the land and continued to develop the parcel. Russell Corp. remained the general contractor, and the development was named Heritage Hill.

The Town of Rutland completely surrounds the City of Rutland. Gleason Road runs east from Route 4 in the City of Rutland. It is in the City for approximately one-quarter mile and then enters the Town. The Heritage Hill development is in the Town. The water line that services Heritage Hill runs along the south side of Gleason Road from Route 4 in the City and crosses into the Town along with Gleason Road. At the entrance to Heritage Hill, the line crosses under Gleason Road into the development. The line carries water from the City water system.

In September 1986, Russell obtained permission from the City to install the water line within the City's right-of-way along Route 4 and

Gleason Road. The agreement stated "the line w[ill] be built . . . and prepared according to the plans prepared by Aronson & Olson, Inc. and will become a City water main once it's completed." The City and Russell agreed to transfer the line without compensation, in exchange for the permission to install it in the City right-of-way.

This case concerns the parallel agreement made with the Town of Rutland. No one disputes that there was an agreement to have the Town take over the Gleason Road water line on completion. Russell, however, maintains that the Town agreed to pay compensation for the line, and the Town denies it. As Russell did not quitclaim the line, East Mountain chose to resolve the dispute in November 1992 by signing a contract with the City of Rutland purporting to transfer the disputed section of line (within the Town boundaries) to the City. East Mountain received no compensation at the time but would receive "hook-on" fees from users who tapped into the line after the date of the contract. These fees would be paid almost solely by Town residents.

In May 1993, the Town filed suit to have the disputed section of line declared free of any right, title, or interest of the City and to declare the November 1992 agreement between the City and East Mountain void. The City counterclaimed, seeking ownership of the entire water distribution system of the Town by condemnation. In July 1994, Rutland Superior Court granted the Town's motion for summary judgment dismissing the City's counterclaim. The Town's claims proceeded to trial.

After a bench trial, the court entered a decision for the Town. The court made specific findings of fact that the Town had granted permission for installation of the line at a warned hearing, attended by representatives of the owners and general contractor for Heritage Hill. The court further found that both parties expected the line to become Town property upon completion without compensation being paid. The court concluded, "John Russell has simply changed his mind. He later saw it to his advantage to demand compensation." The court awarded ownership of the Gleason Road water line within Town limits to the Town. Defendants East Mountain Company and John A. Russell Corporation (defendants) appeal. The City did not appeal the court's decision.

Defendants allege that the trial court erred in deciding: (1) that the water line in Gleason Road became the property of the Town by operation of law; (2) that there was an agreement between the Town and Russell and concluding that the agreement was not barred by

Vermont's Statute of Frauds; (3) that William Kollhepp, Russell's agent, had authority to form the agreement; (4) that the dig permit, without reservations or conditions regarding the water line, was irrelevant to the inquiry; and (5) that the meeting at which the agreement was made complied with Vermont's Open Meeting Law.

Conclusions of law by the trial court will be upheld if supported by the findings. See *Abbiati v. Buttura & Sons, Inc.*, 161 Vt. 314, 318, 639 A.2d 988, 990 (1994). Therefore, our review of the challenged conclusions begins with the court's findings and our determination of whether the findings support the conclusions.

█ The central finding at issue in this case was that Russell agreed to transfer the line in exchange for the Town's permission to install it in Gleason Road. The existence of an agreement is ordinarily a question of fact for the trier. This principle is borne out by our cases. See, e.g., *Toys, Inc. v. F.M. Burlington Co.*, 155 Vt. 44, 582 A.2d 123 (1990). There, we noted that the question of whether a contract existed depends on facts as well as the reasonable inferences to be drawn from them, and is also influenced by the situation of the parties and the subject matter. See *id.* at 50, 582 A.2d at 126-27. Other jurisdictions have stated the general rule more clearly. See, e.g., *Simmons v. Simmons*, 708 A.2d 949, 963 (Conn. 1998) (existence of contract is, at least initially, question of fact); *Fleet Bank-NH v. Christy's Table, Inc.*, 681 A.2d 646, 648 (N.H. 1996) (whether meeting of minds occurred is factual question to be determined by trier of fact); *June Roberts Agency, Inc. v. Venture Properties, Inc.*, 676 A.2d 46, 48 (Me. 1996) (existence of contract is question of fact to be determined by jury).

We turn first to whether the trial court erred in concluding that there was an agreement between the Town and Russell to turn over the completed water line to the Town, without payment by the Town. Defendants do not attack the trial court's findings, yet contend there was insufficient evidence of a meeting of the minds and therefore argue there was no contract.

After a review of the trial court's findings of fact and the evidence below, we conclude there is sufficient evidence to support the trial court's finding of an agreement between the parties. The trial court found that the Rutland Town Board of Selectmen held a meeting in late 1985 or early 1986, for which notice had been given, to hear Russell's request for permission to install a water line in Gleason Road. Russell was represented by William Kollhepp, its Director of Development, who had handled the Act 250 permitting and planning

commission proceedings for Heritage Hill. After Kollhepp requested permission to install the line, board member Rodney Gallipo asked that the line be deeded to the Town on completion. Kollhepp agreed to deed the line to the Town, and the board then voted to grant permission for the installation.

Later correspondence between the parties involved in the construction confirms that there was an agreement to transfer the line to the Town upon completion. Correspondence between the City and the Town demonstrates the Town's intentions. On March 18, 1987, the board wrote to the mayor of the City: "The Town would like to take [the Gleason Road water line] over as a Town line so that qualifying members of the public within the Town may use it. It is awaiting approval under paragraph (7) of the [1972 water supply] Agreement before doing so." The board's letter indicates that the only step remaining before the Town took the line over was the resolution of a disagreement between the Town and City about the amount of water the line could carry. The letter suggests the contract between Russell and the Town was fully performed: the Town granted permission to install, Russell installed and no further performance was required. Compensation for the line was no part of the bargain.

The court below placed particular emphasis on a letter written by Carl Anderson, an attorney who was a vice-president of Russell for the period at issue and functioned as Russell's in-house counsel. Anderson wrote to the board on September 25, 1988, to congratulate the Town on its settling the dispute with the City over the water line's capacity. Then he turned to the Town's pending request for a quitclaim of title to the Gleason Road water line.

> As you may recall, in the past we have been reluctant to Quit Claim the water line to Rutland Town because your attorney, Mark Sperry, had opined that if the Town owned the water line it might not be able to limit service through the water line to just Heritage Hill. In addition since the City had approved only enough water for the Heritage Hill development, distribution of that allocation through that water line to other users would have jeopardized the completion of Heritage Hill.
>
> In anticipation of our ability now to transfer the water line to you I request that you provide me with the following items:
>
> 1. A copy of the fully executed agreement between the Town and the City so that I can confirm for myself that there

is sufficient water available under the agreement to accommodate the completion of the Heritage Hill development.

2. A draft or sample of any proposed Quit Claim which you might require in order to convey the pipeline from East Mountain Land Company to the Town of Rutland.

3. Any other items that you might deem to be necessary or required in connection with the transfer of the line.

In this listing of the paperwork necessary to tie up the transfer, Russell's in-house lawyer, Anderson, makes no mention of compensation nor suggests in any way that compensation was part of the agreement. Like the letter from the Town to the City, this letter evidences the parties' understanding that the agreement was performed by both sides and only the technicality of transferring the line remained.

Although this evidence is pieced together from a number of different and indirect sources, no other explanation presents itself. The documents demonstrate that both parties expected the Town to take over the line; Russell would not have installed the line without permission from the Town, and the Town had a practical need to control its streets as well as to provide water to other residents, motivating its request that the line be deeded to it. The only reasonable inference is the one made by the trial court: there was a simple quid pro quo agreement whereby the Town permitted installation and Russell agreed to deed the line to the Town. While one might wish the trial court's findings had been more direct, there was no other conclusion to reach from the facts before the court.[1]

Defendants offered no contradictory evidence. In fact, defendants Russell Corp. and the City elected not to question John Russell when he was called as plaintiff's witness below, and therefore failed to provide an alternative explanation of how permission to install the line was obtained and on what terms. Defendants called only two witnesses, neither of whom rebutted the account given by plaintiff's witness of the meeting at which the agreement was reached. Defend-

---

[1] The trial court also provided an alternative ground for its decision, concluding that the water line became the property of the Town by operation of law. Defendants have challenged this conclusion but, because we affirm the trial court's holding that an agreement was reached for transferring the line without further compensation, we need not reach the alternative ground. We note only that such a holding would not be inconsistent with the language of 19 V.S.A. § 1102, prohibiting anyone from obtaining a right or interest in a public highway.

ants' witnesses testified primarily about the absence of the minutes of the board meeting, an issue irrelevant to the central question of whether an agreement was reached at that meeting. Because defendants provided no other account of how the line came to be placed in the Town's right-of-way along Gleason Road, the only reasonable inference that could be drawn from the evidence was that plaintiff's account was correct.

■ Defendants cite only two cases in support of their proposition that there was no meeting of the minds between the Town and Russell. These cases are inapposite. *Bell v. Town of Grafton*, 133 Vt. 1, 3-4, 328 A.2d 408, 409 (1974), held there was no meeting of the minds where, in negotiating a contract to sell land, the proposed deed was rejected by one party and no later agreement was reached. That is not the case we have here; the one fact beyond dispute is that all parties expected the Town to take over the line on completion. Defendants suggest we should import an additional term, payment to Russell, into that contract, but the evidence before the trial court does not support such a reading. *Reynolds v. Sullivan*, 136 Vt. 1, 3-4, 383 A.2d 609, 611 (1978), concerned a preliminary option agreement that did not provide terms for payment, interest or security, and we therefore deemed it too vague to be enforced. The credible evidence presented by the Town does not show a vague, preliminary agreement. Defendants have offered no evidence of obtaining permission at any time other than the late 1985/early 1986 board meeting; therefore it is only reasonable to assume they did obtain permission at that time and the board did insist that the line be deeded to the Town on completion. No other explanation for the course of events set out below makes sense.

Next, we respond to defendants' assertion that Kollhepp, Russell's agent, lacked the authority to contract on behalf of Russell and that therefore East Mountain took without notice of the condition created by the contract with the Town. Defendants would apparently have us believe Kollhepp lacked authority to do any of the things he quite evidently did, such as represent Russell at Act 250 hearings and Town planning commission proceedings. If it were true that Kollhepp lacked the authority to contract on behalf of Russell, it is hard to imagine how this project ever got built. Kollhepp was found by the lower court to have been in charge of marketing and development for Russell. He was also found to have appeared at all Act 250 and other meetings to obtain permits for Heritage Hill. He plainly succeeded at these endeavors. Defendants, however, would have us believe he was

somehow limited in his appearance as Russell's agent before the Town board of selectmen. It is impossible to find a basis for such a limitation. Kollhepp was a vice-president of Russell during the year in question; he had the title director of development. He was known to other parties in the construction as the person in charge of permitting and construction. Defendants do not contend that the line was installed without permission; therefore someone was getting permission and contracting with Russell's approval. Again, defendants offered no evidence to contradict the inference of authority created by plaintiff's evidence; they even declined to question John Russell, who presumably would have been in the best position to know the scope of Kollhepp's authority.

■ There can be no other conclusion but that Kollhepp had at least apparent authority to contract with the Town to exchange the water line for permission to install it in the place most advantageous for Russell — the Town's Gleason Road right-of-way. See, e.g., *New England Educational Training Service, Inc. v. Silver Street Partnership*, 148 Vt. 99, 105, 528 A.2d 1117, 1120 (1987) (under doctrine of apparent authority, agent binds principal when third party reasonably relies on representations that agent acting within scope of authority).

We now turn to the argument that the Statute of Frauds bars enforcement of the agreement between the Town and Russell because there is no written agreement. The court below found that an oral agreement was made when the Town granted permission to install the line and Russell promised to deed the line to the Town without payment. The Statute of Frauds requires several types of agreements to be written in order to be enforced. Defendants point to 12 V.S.A. § 181(5), which provides that a contract for the sale of lands, tenements or hereditaments must be in writing.

■ Assuming, arguendo, that the installation agreement could be construed as a sale of lands, this case would fall within the rule established by *Nutting v. Freda*, 153 Vt. 501, 502, 572 A.2d 896, 897 (1990). There, the trial court's findings supported the conclusion that the plaintiff had altered his position in reasonable reliance on the defendant's oral promise and therefore injustice could be avoided only by specific enforcement. This Court held that the defendant's oral promise to convey real property fell under an exception to the Statute of Frauds. See *id.* (citing Restatement (Second) of Contracts § 129 (1981)). In the instant case, the Town undertook a substantial forbearance, permitting Russell to install a ten-inch water main in

Gleason Road, and did so in reasonable reliance on the agreement made at the meeting with William Kollhepp that the line would become part of the Town's water system upon completion. See Restatement (Second) of Contracts § 139(2)[2] (factors supporting enforcement of promise). This performance by the Town of its part of the bargain has altered the positions of the parties, and enforcement of the agreement is needed to prevent injustice.

Defendants further claim that because they failed to obtain a dig permit, which under statutory authority should have included conditions such as the transfer of the line, there was no agreement that the line be transferred. This argument is meritless. The trial court concluded: "If Russell failed to apply for a required permit, this in no way limits the Town's rights or impairs its ownership. We find the lack of the permit is not relevant to this controversy."

■ We agree with the trial court. Under 19 V.S.A. § 1524 (now superseded by 19 V.S.A. § 1111), persons proposing to install pipes and wires in highways must obtain a permit and the issuing entity must include any conditions imposed. The burden is on the developer to apply for and obtain permits. See id. at § 1524(a) ("Permits must be obtained by anyone or any corporation wishing to use as defined in this section any part of the highway right-of-way either in the state or town system."). The trial court correctly concluded that the absence of the dig permit was due to Russell's oversight and has no bearing on whether Russell and the Town agreed the line was to be transferred without compensation.

Lastly, we look at the defendants' contention that Vermont's Open Meeting Law bars enforcement of this contract. Defendants argue that because plaintiff has not produced the minutes of the board meeting at which the contract was formed, that meeting did not comply with Vermont's Open Meeting Law. See 1 V.S.A. § 312(b) (requiring minutes to be taken of all meetings of public bodies). Therefore, defendants assert that the meeting was illegal and that any action taken by the board at the meeting is void.

■ Defendants' argument has no merit. First, the trial court found that the meeting was duly warned and therefore open to the public.

---

[2] Section 129 of the Restatement (Second) of Contracts concerns the enforcement of oral promises with respect to the transfer of an interest in land. Section 139 of the Restatement (Second) of Contracts reiterates the same rules as general principles for the enforcement of contracts governed by the Statute of Frauds. See Restatement (Second) of Contracts § 139 (1981). The factors supporting enforcement are listed under § 139, but the rule is the same as that in § 129.

The uncontroverted testimony detailed that minutes were taken by one of two people and filed according to custom. Thus, the trial court did not find that minutes had not been taken at the meeting, but only that no copies of the minutes can presently be found. We decline to adopt a rule that invalidates decisions of public bodies because the minutes of a meeting have been lost. See *Valley Realty & Dev., Inc. v. Town of Hartford*, 165 Vt. 463, 467, 685 A.2d 292, 295 (1996) ("Invalidation of public action is often an 'extreme remedy' that may be inappropriate for the underlying violation."). The intent of the Open Meeting Law was "to give public exposure to governmental decision-making. The purpose is not to create 'vehicles for individuals displeased with governmental action to obtain reversals of substantive decisions.'" *Id.* at 467-68, 685 A.2d at 295 (internal citations omitted).

*Affirmed.*