# Vermont Yankee Nuclear Power Corporation v. Department of Taxes

[996 A.2d 186]

No. 08-447

Present: Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.

Opinion Filed March 19, 2010

*Christopher D. Roy* and *Wm. Roger Prescott* of *Downs Rachlin Martin PLLC*, Burlington, for Plaintiff-Appellant.

*William H. Sorrell*, Attorney General, and *Danforth Cardozo, III*, Assistant Attorney General, Montpelier, for Defendant-Appellee.

¶ 1. **Dooley, J.** Taxpayer Vermont Yankee Nuclear Power Corporation appeals the denial by the Windham Superior Court of its claim for additional interest on an income tax refund paid to it. Taxpayer argues that 32 V.S.A. § 5884(c), which directs that interest on a tax refund be calculated from forty-five days after the date an amended return is filed, is inapplicable and that the interest computation should be based on a date over ten years earlier. We disagree and affirm.

¶ 2. In 1993, taxpayer filed a Vermont corporate income tax return for tax year 1992 showing $15,175,573 of federal taxable income, $16,406,449 of Vermont net-apportioned income, and tax due of $1,351,772. In September 1994, taxpayer filed an amended 1992 corporate income tax return, seeking a refund of $962,549 based on a decrease in its federal taxable income due to an increased deduction for fees paid to the United States Department of Energy for decontaminating and decommissioning nuclear fuel enrichment sites. The claimed additional deduction was $11,667,257 and, if accepted, greatly reduced taxpayer's taxable income.

¶ 3. By letter dated January 20, 1995, the Department of Taxes acknowledged receipt of the amended return and requested taxpayer to "provide information indicating that the United States Internal Revenue Service (IRS) has accepted the amended federal corporate return as filed and issued the refund requested." In March 1995, a Department examiner spoke with a representative of taxpayer and learned that the IRS had not issued a refund based on the amended federal return and that the underlying issue likely would not be resolved until 1996. Taxpayer understood from this conversation that the 1994 amended state return had not been accepted by the Department, but would remain "open" pending the federal resolution. The Department did not issue taxpayer its requested refund, nor did it provide taxpayer with any written or verbal notification that the refund claim was denied. The Department did not schedule, and taxpayer did not request, a hearing on taxpayer's claim. See 32 V.S.A. § 5884(a). In May 1995, a Department representative contacted the IRS and was told that the federal amended return was filed, but that no action had been taken. Although the Vermont governing statute provides that failure to refund the amount requested within six months of the request is deemed a decision by the Commissioner, id., the parties here did not treat the passage of time as producing a refund denial, but instead both parties recognized that the refund request was to be held in abeyance pending an IRS decision on the refund request filed with it.

¶ 4. In April 1996, taxpayer filed a second amended 1992 return. This amended return was based on changes to taxpayer's federal taxable income made by agreement with the IRS; these changes did not involve decontamination and decommissioning costs. This amendment increased the tax due by approximately $100,000 over that paid in 1993, and taxpayer paid the additional amount. A letter accompanying this amended return specifically stated, "[t]he amended return included in this package does *not* replace the amended return filed earlier for 1992."

¶ 5. Over the next several years, the Department occasionally contacted taxpayer to inquire if it had resolved the decontamination and decommissioning deduction with the IRS. Taxpayer advised the Department that it would inform the Department when the IRS acted upon its amended federal return.

¶ 6. In 2000, taxpayer again amended its 1992 tax return based on federal changes to its taxable income. By accompanying letter,

taxpayer advised the Department that this amendment reflected changes to "the tax treatment of [Department of Energy] Site Decontamination and Decommissioning fees." Taxpayer did not mention whether this amended return was intended to replace the amended return filed in 1994, as it had done in 1996. This amended return also increased taxpayer's taxable income. Taxpayer enclosed payment consistent with this amended return.

¶ 7. In July 2005, taxpayer filed another amended tax return for 1992, based on the IRS redetermination of its taxable income reflecting the decontamination and decommissioning costs. On this return it noted that the amendment was made "per settlement in Vermont Yankee v. U.S. (DOE D&D)." Accounting for prior payments to the State, taxpayer requested a refund of $804,645 based on federal taxable income of $7,932,341. Included with this return was a letter from taxpayer and a copy of the settlement with the IRS dated May 5, 2005. Taxpayer made no mention of the 1994 amendment in this letter. In October 2005, the Department paid taxpayer the requested tax refund amount, as well as $7,402.74 in interest, calculated from forty-five days following the filing of the 2005 amended 1992 return.

¶ 8. In reaching its decision on the amount of interest, the Department relied upon 32 V.S.A. § 5884(c), as this subsection was added in 2003. The subsection provides, "in the case of a refund . . . claimed on an amended return, the interest on the excess amount to be refunded by the commissioner to the taxpayer shall be computed from 45 days after the date the . . . amended return is filed." This subsection applies to interest on refunds granted on any amended returns filed after June 18, 2003. 2003, No. 68, § 87(24) ("Sec. 81, relating to interest on overpayments, shall apply to amended and late returns filed on or after the date of passage."). Prior to that date, under § 5884(b) as it then existed, interest on refunds successfully claimed on an amended return ran from forty-five days after the time the original payment was made or due, whichever was later. 1983, No. 59, § 4 (amending 32 V.S.A. § 5884(b)).

¶ 9. Taxpayer appealed the Department's interest determination to the Commissioner, arguing that the 2003 subsection did not apply because of the 1994 amended return. After a hearing, the Commissioner found that the refund was granted on the amended return filed in 2005, rather than the amended return filed in 1994, and, therefore, applied the amended statute to conclude that

interest would begin to run forty-five days after the 2005 filing. The Commissioner concluded that the plain meaning of the language of § 5884(c) applied and limited the period for which taxpayer could claim interest. The Commissioner rejected "taxpayer's claim that the parties agreed that the 1994 amended return would remain the operative return for an extended, indefinite period of time, and would necessarily control the calculation of interest accrued." The Commissioner found instead that the parties shared only "a core understanding that the state refund would be dependent on the outcome of the federal determination." Specifically, the Commissioner noted that this was not a case where the 1994 amended return was finally accepted by the IRS. Instead, taxpayer filed two new amended returns dealing with decontamination and decommissioning costs, "each constituting new transactions." Finally, the Commissioner rejected taxpayer's claim that the State was estopped from denying taxpayer's interest claim. The Commissioner concluded that the Department made no representation regarding whether taxpayer would receive interest from the time of the filing of the 1994 amended return on which taxpayer could rely.

¶ 10. Pursuant to § 5885(b), taxpayer appealed this decision to the superior court, which affirmed the Commissioner's decision. The superior court concluded that "the [Commissioner's] . . . finding that there was no agreement to hold the 1994 amended return open indefinitely is logical based on the evidence, and is certainly not clearly erroneous." The court also relied upon the fact that the refund was given based on the 2005 amended return, and not based on the 1994 amended return. It noted that § 5884(c) gave controlling effect to the return on which the refund was given and not an earlier return raising the same or a similar issue. It also concluded that estoppel did not apply. This appeal followed.

¶ 11. We start with the statute governing interest on refunds, applying our usual presumption that its significance can be determined from the plain meaning of the language used. See *Smith v. Desautels*, 2008 VT 17, ¶ 17, 183 Vt. 255, 953 A.2d 620. As set out above, the relevant statute provides that with respect to a "refund . . . claimed on an amended return," the interest is computed from "45 days after the date the . . . amended return is filed." 32 V.S.A. § 5884(c). In this case, the refund was based on an amended return filed in 2005. Unless the term "amended

return" means something different the second time it is used in the sentence from what it means in the first usage, the interest must also be based on the amended return filed in 2005. In fact, that interpretation seems necessary because the interest will be based on the amount of the refund specified in the 2005 amended return. Moreover, the statute's effective date makes the subsection applicable to interest on refunds granted on amended returns filed after June 18, 2003.[1] 2003, No. 68, § 87(24). Thus, the plain meaning of the statutory language is that the interest starts to run forty-five days after the filing of the amended return on which the refund is based, in this case June 28, 2005.

¶ 12. Both the Commissioner and the superior court noted the difficulty presented to taxpayer by the statutory language. The Commissioner explained that this "is not an instance where the taxpayer simply filed verification of IRS acceptance of its 1994 federal amendment, as was requested by the Department in 1995, so that the amended state return could be processed and refund issued." The superior court similarly noted that to accept an argument that the 2005 amendment related back to 1994 for purposes of interest, it would have to read into § 5884(c) language that was not present. The court noted that it would have to construe the statute to read that interest was computed from forty-five days after the date of the amended return "*or any prior amended return raising the same issue.*" We agree that reading in that additional language would be inappropriate.

¶ 13. Our conclusion is consistent with the legislative purpose in amending the interest statute. In amending § 5884 in 2003, the Legislature shifted from generally compensating taxpayers for the time-value of money, regardless of when a refund claim was made, to compensating taxpayers only for the time-value of money when the Commissioner delays in processing that refund claim. This shift evidences an intent to allow interest to accrue only from the point in time when the Commissioner could act on a refund claim. See *Baker v. State*, 170 Vt. 194, 199, 744 A.2d 864, 868 (1999) (stating that when language of statute is plain and unambiguous, we presume Legislature intended meaning expressed). As taxpayer was not arguing that the Vermont tax consequences should deviate from the federal treatment of these deductions, but

---

[1] Taxpayer has not argued that 1 V.S.A. § 214(b) prevents the application of § 5884(c) to the circumstances of this case.

only for the automatic application of the federal resolution to its Vermont income taxes, the Commissioner could reasonably act only when taxpayer resolved its federal issue.

¶ 14. Taxpayer argues that because many cases take years to resolve with the IRS, it is unreasonable to conclude that the Legislature intended that taxpayer would lose interest from the first filing of a claim just because the claim had to be adjusted along the way, resulting in a different final claim. Regardless of whether, as argued by the taxpayer, this result is unreasonable or unfair, it is precisely the result commanded by the statutory language, and we conclude that the result was intentional. Indeed, if taxpayer had filed both its initial refund claim and the final refund claim after the effective date of the current version of § 5884(c), it would have no substantial argument that it was entitled to interest from the time of the filing of the initial claim. Taxpayer is seeking an exception from the operation of § 5884(c), not a result consistent with that section.

¶ 15. Taxpayer's response is that there was an agreement between it and the Department to "hold open" the 1994 refund request and that this agreement covered interest. Thus, taxpayer argues, because of the preexisting agreement, its right to interest must be governed by the interest statute in effect in 1994, which allowed interest in overpayment situations going back to the date of the original tax payment. In making this argument, taxpayer relies upon § 5884(a), which provides:

> At any time within three years after the date a return is required to be filed under this chapter, or six months after a refund was received from the United States with respect to an income tax liability, or an amount of taxable income, under the laws of the United States, reported in a return filed under the laws of the United States for the taxable year, with respect to which that return was filed under this chapter, whichever is later, a taxpayer may petition the commissioner for the refund of all or any part of the amount of tax paid with respect to the return. *Unless the period is extended by agreement of the commissioner and the taxpayer,* the commissioner shall thereafter, upon notice to the taxpayer, hold a hearing on the claim and shall notify the taxpayer of his or her determination of the claim within 30 days of the

> hearing. The failure of the commissioner to refund the amount claimed by a taxpayer within six months of the date of the petition for the refund, under this subsection, shall be considered to be a notification to the taxpayer of the commissioner's determination concerning the claim. The notification shall be considered to have been given on the date of the expiration of the six-month period.

(emphasis added).[2] Taxpayer argues that the agreement between it and the Department is the type provided for in the emphasized language of § 5884(a), and the agreement is shown primarily by the absence of the hearing called for in the statute. In essence, under taxpayer's argument, there was a contract implied from the conduct of the parties. See *Cushman v. Outwater*, 121 Vt. 426, 429, 159 A.2d 89, 91 (1960) (contract and its terms may be implied from facts surrounding transaction).

¶ 16. Taxpayer identifies the following additional evidence of this agreement: (1) the typical practice of the Department was to postpone action on Vermont refund claims that were based upon an underlying federal refund claim; (2) the Department's actions in this case were consistent with the typical practice; (3) an officer of taxpayer testified that he understood that the return was open; and (4) the Department sought updates from the IRS and taxpayer on the status of the federal refund claim. In regard to the usual practice of the Department, the Commissioner specifically found that:

> The Department's practice was to hold a refund request that was dependent on federal tax changes in abeyance and neither formally approve or deny the request until the IRS took action and the taxpayer provided documentation of that action, even if a taxpayer's request for refund remained unanswered by the Department for more than six months.

Taxpayer argues that this finding acknowledges that there was in fact an agreement between taxpayer and the Department.

¶ 17. We need not decide whether the agreement alleged by taxpayer would be sufficient to overcome the clear language of the

---

[2] The version in effect in 1994 was slightly different, but the differences are not of consequence to the issues before us. See 1966, No. 61 (Sp. Sess.), § 1 (creating the Vermont income tax and enacting, among other sections, § 5884).

statute. Rather, taxpayer's agreement argument fails for multiple other reasons.

¶ 18. The first and foremost reason is that the Commissioner specifically concluded that "the evidence presented does not support the taxpayer's claim that the parties agreed that the 1994 amended return would remain the operative return for an extended, indefinite period of time." Taxpayer argues that whether there is an agreement is a question of law and as such, the Commissioner's finding should not be accorded any deference. We disagree. Whether there was a meeting of minds is a question of fact. *Quenneville v. Buttolph*, 2003 VT 82, ¶ 16, 175 Vt. 444, 833 A.2d 1263; *Town of Rutland v. City of Rutland*, 170 Vt. 87, 90, 743 A.2d 585, 587 (1999). Moreover, in cases in which the terms of a contract are ambiguous, disputes concerning the agreed-upon terms and conditions are issues of fact. *Dillon v. Champion Jogbra, Inc.*, 175 Vt. 1, 6, 819 A.2d 703, 707 (2002); *Logan v. Bennington College Corp.*, 72 F.3d 1017, 1022 (2d Cir. 1995) (decided under Vermont law). Thus, we will defer to the Commissioner's finding unless clearly erroneous. *Morton Bldgs., Inc. v. Dep't of Taxes*, 167 Vt. 371, 374, 705 A.2d 1384, 1386 (1997). We conclude that the Commissioner's finding that there was no agreement to hold open the 1994 amended return indefinitely is not clearly erroneous.

¶ 19. Nevertheless, this dispute is really about the nature and terms of an agreement rather than whether an agreement existed. Thus, we give no substantial significance to taxpayer's choice of the word "agreement" and the Commissioner's choice of the words "understanding" or "practice." A good deal of the difference between the positions of the Commissioner and taxpayer results from the terminology selected by taxpayer that the 1994 refund request remained "open." That terminology is, at best, ambiguous and is viewed differently by the parties. To taxpayer, it means that the ultimate refund determination was based on the 1994 claim, rather than on the 2005 claim, and the right to interest is therefore based on the interest law in effect in 1994. To the Commissioner, the characterization that the 1994 refund request remained "open" related solely to how it was processed internally and not to the ultimate resolution of the refund for decontamination and decommissioning expenses, and certainly not to interest. There are significant difficulties with taxpayer's use of that terminology and substantial evidence to support the Commissioner's view.

¶ 20. Taxpayer argues for its interpretation of the agreement in the following way. First, as noted above, it argues that the agreement was authorized by the specific language of § 5884(a), and that language governs an agreement to extend the time for hearing on a refund request. Second, taxpayer argues that it had the right to adjudicate its refund claim before the Commissioner, and it gave up that right in return for the Department holding "open" the 1994 claim in the way described above. There are difficulties with both of these arguments.

¶ 21. First, taxpayer interprets the authorization in § 5884(a) to extend the "period" to mean the period in which the Commissioner must give a taxpayer a hearing on a refund request. The term "period" is not statutorily defined. We cannot agree with taxpayer's interpretation of the term because the statute provides no time period for giving taxpayer a hearing. See 32 V.S.A. § 5884(a).

¶ 22. Moreover, this case never reached the point where the Commissioner was required to give taxpayer a hearing on its refund request. As we recently held in *GP Burlington South, LLC v. Department of Taxes*, 2010 VT 23, ¶ 14, 187 Vt. 421, 996 A.2d 180, the Commissioner's obligation to hold a hearing is triggered under § 5883 only when the Department denies a refund request and the taxpayer requests a hearing before the Commissioner. Even if there were a de facto denial, there was no request for a hearing here.

¶ 23. Second, taxpayer argues that it gave up the right to adjudicate the treatment of decontamination and decommissioning fees as deductions from federal taxable income before the Commissioner and, if necessary, the state courts. We do not have to decide whether in the Vermont "piggybacked" income tax system a taxpayer must resolve all issues relating to federal taxable income at the federal level or, alternatively, could litigate them in the Vermont administrative and judicial process.[3] In this case, there is no evidence to show that taxpayer ever intended to

---

[3] Vermont's income tax system is often said to be "piggybacked" on the federal income tax. See 32 V.S.A. § 5820 (noting that tax chapter intended to conform with Internal Revenue Code except as otherwise provided); *id.* § 5888(1) (providing that determination by federal government which establishes amount of taxpayer's taxable income under federal laws shall be binding on taxpayer and state; a determination includes court decision or agreement between taxpayer and federal government entered into under 26 U.S.C. § 1313(a)(4) or § 7121); *Tarrant v. Dep't*

litigate the issue before the Commissioner and the Vermont courts. In fact, the evidence was that taxpayer was part of national litigation to resolve the issue for nuclear power plants generally. Taxpayer first filed its refund claim with the IRS with respect to its federal income tax liability. When the Department inquired about the IRS response, taxpayer answered that the IRS had not provided a refund, the "issue is [a] national issue," and "may not clear until 1996." The final resolution in 2005 was pursuant to settlement of litigation in a United States district court. The evidence shows that taxpayer gave up nothing to secure its asserted agreement.

¶ 24. In contrast, the Department acted consistently with the Commissioner's findings on the agreement and the Commissioner's view of keeping the refund application "open." The Department made no promise that it would determine the issue pursuant to the 1994 refund request, nor did it promise that it would not require a later filing once the federal liability was determined. As outlined above in the statement of facts, taxpayer amended its 1992 return in 2000 with respect to the issue of decontamination and decommissioning expenses and never mentioned the 1994 refund request. Most importantly, the 2005 refund request was for an amount substantially different from the 1994 request because taxpayer only partially prevailed in its dispute with the IRS over the tax treatment of these expenses. As the Commissioner found, taxpayer's argument would have been much stronger if it had sought a refund based entirely on the 1994 refund request, showing it finally had IRS support for its claim.

¶ 25. In response, taxpayer emphasizes the Commissioner's determination that "taxpayer understood . . . that the 1994

---

of Taxes, 169 Vt. 189, 201, 733 A.2d 733, 741 (1999). We have considered instances in which a taxpayer's state taxable income should be calculated differently from his or her federal taxable income. See, e.g., Oxx v. Dep't of Taxes, 159 Vt. 371, 377, 618 A.2d 1321, 1325 (1992) (permitting exclusion of recapture of investment credit for purpose of calculating Vermont income tax, though federal tax calculations included recaptured amount); Winterset, Inc. v. Comm'r of Taxes, 144 Vt. 230, 232, 475 A.2d 231, 232 (1984) (concluding that Vermont corporate net income does not include amount otherwise required to be included in federal taxable income, and noting that "the amount a taxpayer reports as his federal taxable income is not necessarily binding on the taxpayer or the state in calculating the taxpayer's state income tax liability"); In re Knosher, 139 Vt. 285, 287, 428 A.2d 1104, 1105 (1981) (allowing deviation from federal income tax liability reported on tax return). In these cases, however, the taxpayers were not contesting the calculation of their federal taxable income.

amended state return had not been accepted by the Department, but would remain 'open' pending the outcome of the IRS review." This finding, and the testimony underlying this finding, merely show taxpayer's understanding of the Department's inaction. In any event, it is not inconsistent with the Commissioner's view of what was left open. Similarly, we do not share taxpayer's view of the significance of the words used by the Department in the request for information it sent to the IRS in May 1995. On this preprinted form, in the section indicating the reason information was requested, the Department checked the box for "pending examination."[4] This description is also entirely consistent with the Commissioner's view of what was left open.

¶ 26. Although we conclude that the Commissioner's finding that no determinative agreement existed was supported by the evidence, we emphasize that taxpayer's burden goes beyond a showing of an agreement to keep the 1994 refund filing open. For taxpayer to prevail on its claim, it must show an agreement with respect to interest. The availability of interest on the refund amount was never discussed by taxpayer or the representatives of the Department. Thus, there was no express agreement that taxpayer would receive interest on the refund going back to 1994 when the issue of the tax liability for decontamination and decommissioning expenses was finally resolved. Taxpayer is relying upon an implied agreement based on an also-implied agreement resulting from the postponement of Department action until the IRS completed its action on the federal return.

¶ 27. As with taxpayer's argument with respect to the alleged agreement to keep the 1994 return open, there was no reason why the Department and a taxpayer would enter into an interest agreement prior to 2003. Under § 5884(b) as it then existed, interest on refunds successfully claimed on an amended return ran from forty-five days after the time the original payment was made or due, whichever was later. 1983, No. 59, § 4 (amending 32 V.S.A. § 5884(b)). No agreement was necessary for taxpayer to obtain this retroactive award of interest, and there was no deadline to claim the interest other than the deadline for the amended return.

¶ 28. What taxpayer actually claims is an agreement that its interest claim would be based on the law in effect in 1994,

---

[4] The other reasons that could have been selected were "pending collection activity," "other," or "criminal investigation."

irrespective of any changes in the law that might occur before the final refund request was submitted. Even if we agreed that there was an agreement to keep the 1994 refund request "open," we could not agree that the agreement was broad enough to include this coverage of interest.

■ ¶ 29. Because there was no agreement to hold open the 1994 refund claim as taxpayer argued or to provide interest under the law in effect in 1994, taxpayer's refund claim was based on its 2005 amended return and not on the 1994 request for a refund. Even if taxpayer could claim eleven years of retroactive interest consistent with the amended version of § 5884(c), the Commissioner's findings of fact, which we uphold, prevent that claim. Thus, since the refund paid in 2005 could have been paid only with respect to the amended return filed in 2005, the Department correctly calculated the interest due thereon.[5]

■ ¶ 30. Finally, taxpayer argues that the Department is equitably estopped from not paying the retroactive interest taxpayer claims. The Commissioner rejected this argument and concluded that taxpayer did not prove that it reasonably relied on any misinformation or false assurances by the Department or its employees. "The doctrine of estoppel is based upon the grounds of public policy, fair dealing, good faith, and justice, and its purpose is to forbid one to speak against his own act, representations or commitments to the injury of one to whom they were directed and who reasonably relied thereon." *My Sister's Place v. City of Burlington*, 139 Vt. 602, 609, 433 A.2d 275, 279 (1981) (quotation omitted). Even if the Department provided some assurances to taxpayer that the 1994 refund request remained open, such assurances would be entirely consistent with Vermont law, which permits refund claims based on federal changes in taxable income up to six months after a federal refund is issued. 32 V.S.A. § 5884(a). Thus, taxpayer's right to a refund based upon changes in its federal taxable income was not extinguished, whether or not there was an agreement to hold open the 1994 refund claim. Furthermore, taxpayer has not shown that "the injustice that would ensue from a failure to find an estoppel sufficiently

---

[5] Taxpayer makes additional arguments about whether the 1994 refund request was deemed denied because no action was taken on it for over six months. In view of our construction of § 5884(c) and our affirmance of the Commissioner's findings, we need not consider those arguments.

outweighs any effect upon public interest or policy that would result from estopping the government in a particular case." *In re Letourneau*, 168 Vt. 539, 547, 726 A.2d 31, 37 (1998) (quotation omitted). Specifically, taxpayer has not shown that the Department treated taxpayer unfairly. Any alleged injustice is due to a legislative change in the availability of interest under the governing statute, not from the Department's actions in handling the 1994 refund claim. Allowing estoppel here would significantly undermine the public policy choice the Legislature made in 2003.

*Affirmed.*