*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2011-131

AUGUST TERM, 2011

| | |
|---|---|
| Elizabeth Crawford | } APPEALED FROM: |
| | } |
|    v. | } Superior Court, Windham Unit, |
| | } Civil Division |
| | } |
| Patricia Farrington and Honora Winery | } DOCKET NO. 30-1-09 Wmcv |
| & Vineyard, Inc. | } |

Trial Judge: John P. Wesley

In the above-entitled cause, the Clerk will enter:

Plaintiff Elizabeth Crawford appeals from the trial court's order in this breach-of-contract dispute. We affirm.

This case concerns the sale of plaintiff's real property in Wilmington, Vermont. Plaintiff alleged that defendants failed to fulfill a promise to construct an apartment on the property where she could live rent-free for life. Following a bench trial, the court granted equitable relief to plaintiff. It made the following findings. Defendant Farrington owned and operated the Honora Winery & Vineyard, Inc. Farrington and her husband owned approximately 200 acres of land in Halifax, Vermont on which they planted grapes and constructed buildings associated with the wine business.

Farrington sought to purchase a 2.1 acre parcel of land owned by plaintiff. In July 2004, plaintiff and Farrington entered into a purchase and sale agreement whereby plaintiff agreed to sell Farrington the 2.1 acre parcel, together with an old barn on the property, for $75,000. The agreement provided that Farrington would lease retail space in the barn to plaintiff; it also specifically stated the transaction did not include an adjoining .53-acre parcel owned by plaintiff. Both parties were represented by experienced real estate attorneys who prepared and approved the parties' agreement.

After signing this agreement, plaintiff and Farrington engaged in further discussions regarding the .53-acre parcel. Because plaintiff seemed reluctant to sell, Farrington suggested that defendants construct an apartment in the barn where plaintiff could live rent-free for her lifetime. Following this discussion, defendants' attorney sent plaintiff's attorney a letter outlining his understanding of the new terms to which their clients had agreed. The letter stated:

> [t]he new agreement will call for [plaintiff] to sell both parcels, including the .53 parcel . . . the price will remain the same . . . . [Defendant] Farrington will arrange for an apartment to be constructed (at her earliest convenience) in the structure for the benefit of [plaintiff] for her sole use for her lifetime. No rent will be charged, although [plaintiff] will need to pay for her own utility costs and insure her own belongings. We should probably have a lease drawn up at the time of occupancy just to clarify the arrangement.

This was the entire substance of the parties' written representations regarding the disposition of the .53 acre parcel. The court found that it established no start date for construction, no expected time of occupancy, no further definition of the phrase "at her earliest convenience," no identification of the configuration of the apartment or any amenities or its location in the larger reconstructed barn, and no further elaboration of possible lease terms other than the reference to plaintiff's responsibility for "utility costs" and to "insure her own belongings." Plaintiff signed the letter, indicating her acceptance of the modifications to the purchase and sale agreement. Neither the parties nor their attorneys engaged in any further discussions about this letter prior to closing.

The court found that, although not stated in the agreement, plaintiff and her attorney believed that the apartment would be located on the second floor of the barn and would be approximately 900 square feet. Plaintiff and her attorney believed that the apartment would be ready within a year. Nonetheless, there were no discussions or any mutual understanding as to when occupancy would occur. Farrington asserted that the term "at her earliest convenience" was used because she needed flexibility with respect to her business plans. Farrington stated that she would not have bound herself to any fixed date given the uncertainties surrounding the project and permit applications. Any promise that she made was, in her view, subject to her business judgment and the dictates and vagaries of the permitting process. For her part, plaintiff acknowledged not having carefully read or understood the term "at her earliest convenience," especially as it affected Farrington's exercise of judgment as to how the creation of the apartment would be coordinated with the renovation of the barn, and its function within the business plan of the winery.

The parties closed on both properties in September 2004. Plaintiff conveyed her land via warranty deed, and defendants have since paid for the property. The deed did not refer to any apartment or retail space reserved by plaintiff, or to any future lease to be negotiated and drawn up between the parties.

Defendants ran into numerous permitting hurdles between September 2004 and August 2006, and they did not begin to restore the barn until June 2006. A certificate of occupancy was required prior to the commencement of any use of the renovated barn, and defendants could not obtain a certificate allowing the use of only a portion of the building. Both prior to and since the conveyance of the barn property, plaintiff has lived in rented apartments. Between October 2005 and December 2010, plaintiff spent $55,725 in rent.

Based on these and other findings, the court aptly concluded that this case presented:

> a dispiriting accumulation of circumstance by which two well-meaning parties, each represented by counsel highly regarded as real estate practitioners, entered upon a transaction for the conveyance of real property which became subject to vagaries and contingencies not well-understood by either party. The respective roles of counsel in contributing to the misunderstandings at the heart of the dispute seem destined to remain inadequately explained. Nevertheless, fundamental principles of contract formation compel the conclusion that, as to Plaintiff's expectation that Defendants would construct an apartment for her lifelong occupancy rent-free, the parties never reached a meeting of the minds as to all the essential terms of such an agreement to make it enforceable in this lawsuit.

The court thus rejected plaintiff's contract claim.

2

It awarded equitable relief to plaintiff, however, under a theory of quantum meruit, which is based on the promise implied by law to make fair compensation for beneficial services rendered and knowingly accepted. The court found that there was a benefit bestowed on defendants by virtue of plaintiff's conveyance of the .53-acre parcel, which merged upon the conveyance with the barn lot and could not be returned to plaintiff. Because the contemplated consideration for the conveyance failed due to the indefinite nature of its terms, plaintiff had received nothing of value in return for the conveyance. To accomplish equity and avoid unjust enrichment, the court ordered defendants to pay $50,000 to plaintiff—representing the fair market value of the .53-acre parcel—plus interest from the date of the closing. Plaintiff appealed from this order.

Plaintiff asserts that the court erred in finding that there was no meeting of the minds. According to plaintiff, both parties understood the clause "at her earliest convenience" to mean that the apartment would be completed within twelve to twenty-four months. She cites testimony by Farrington in support of her position. Alternatively, she argues that even if the time for performance was not fixed, the law implied that it would occur within a reasonable period of time, which plaintiff argues is twelve to twenty-four months. Plaintiff also asserts that the absence of other details in the agreement did not render it unenforceable. She states that the parties had planned where the apartment would be located, there was no confusion that it would be a one-bedroom apartment, and no party testified to any uncertainty about the details of the apartment.

"The existence of an agreement is ordinarily a question of fact for the trier." Town of Rutland v. City of Rutland, 170 Vt. 87, 90 (1999). "When reviewing the factual findings of a trial court, we view them in the light most favorable to the prevailing party below, disregarding the effect of modifying evidence, and we will not set aside findings unless they are clearly erroneous." Catamount Slate Prods., Inc. v. Sheldon, 2003 VT 112, ¶ 14, 176 Vt. 158. "The findings will stand if there is any reasonable and credible evidence to support them." Id.

The record supports the trial court's finding that there was no meeting of the minds. See Starr Farm Beach Campowners Ass'n, Inc. v. Boylan, 174 Vt. 503, 505 (2002) ("An enforceable contract must demonstrate a meeting of the minds of the parties . . . ."); see also Evarts v. Forte, 135 Vt. 306, 310 (1977) (recognizing that "[v]agueness, indefiniteness and uncertainty of expression as to any of the essential terms of an agreement have been held to preclude the creation of an enforceable contract"). Plaintiff essentially relies on modifying evidence, which we disregard on review. As the trial court explained, plaintiff believed that the agreement obligated defendant to construct an apartment within a year. Farrington believed otherwise. Farrington testified that she needed flexibility in constructing the barn apartment and that she would not have agreed to a strict timeline. According to Farrington, such a requirement would have been "a deal breaker." Even if Farrington had intended or hoped to finish the barn apartment within one to two years, she still believed she had the flexibility to do otherwise. The court credited Farrington's testimony, and it is for the trial court, not this Court, "to determine the credibility of the witnesses and weigh the persuasiveness of the evidence." Cabot v. Cabot, 166 Vt. 485, 497 (1997).

The trial court also rejected plaintiff's assertion that the law should imply that Farrington would perform her obligation within "a reasonable period of time," which to plaintiff means twelve to twenty-four months. We agree with its analysis. As the court found, the time for performance was but one of many missing terms, and the legal maxim on which plaintiff relied did not fit the circumstances presented. The parties did not overlook the time for performance. Instead, they specifically acknowledged that Farrington would construct the apartment "at her earliest convenience." Because this term afforded defendant almost unbridled latitude, it should have caught the parties' attention. Yet, plaintiff admittedly did not become aware of how much subjective discretion defendant retained until

3

she became deeply involved in this litigation. As for defendant, she insisted that any demand for less discretion would have been unacceptable because the barn project was fraught with so many uncertainties.

As the trial court concluded, when considered in the context of the parties' differing expectations, defendant's reservation of the right to perform at her convenience was a material aspect of the attempted agreement. While plaintiff lamented that she never would have agreed if she had known that her occupancy might be so long delayed, defendant maintains that any more limiting restriction would have precluded any agreement on her part. From her point of view, plaintiff claimed justification in believing that defendant's "earliest convenience" should have been satisfied at the latest by the time this suit was filed. On the other hand, defendant's experience with permitting complications and associated delays subsequent to the closing could lead her to justifiably argue that the time of "her earliest convenience" had become unavoidably extended. The failure to consider all of the contingencies that might affect defendant's "convenience" resulted in each party's reliance on a vaguely defined term which was reasonably susceptible to two very different interpretations. We agree with the court that the resulting state of affairs reflected a quintessential absence of a meeting of the minds.

None of plaintiff's arguments persuade us otherwise. Plaintiff cites <u>Cushman v. Outwater</u>, 121 Vt. 426 (1960), as support for her position. <u>Outwater</u> involved a claim for equitable relief, however, and we do not find it persuasive here. This is not a case, moreover, where it is appropriate to construe any ambiguities against the drafter of the memorandum, as plaintiff suggests. There is no contract to construe. For the same reason, plaintiff's reliance on the implied covenant of good faith and fair dealing is misplaced. Finally, for the reasons set forth above and discussed by the trial court, we reject plaintiff's assertion that the memorandum contained sufficient detail to render it enforceable.

<u>Affirmed</u>.

BY THE COURT:

_____
John A. Dooley, Associate Justice

_____
Denise R. Johnson, Associate Justice

_____
Marilyn S. Skoglund, Associate Justice

4